Jerold C. Feuerstein, Esq. (JF9829)
360 Lexington Avenue, Suite 1200
New York, New York 10017
Telephone: 212-661-2900
Facsimile: 212-661-9397

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

EASTERN SAVINGS BANK, FSB,                         Civil Action No.
                                                   Filed:
                              Plaintiff,

        -against-

MARCIA GORDON and NEW YORK CITY                    VERIFIED COMPLAINT
ENVIRONMENTAL CONTROL BOARD,

                              Defendants.
-------------------------------------------------------------x

Plaintiff, Eastern Savings Bank, fsb ("Eastern") by and through its attorneys, Kriss &

Feuerstein LLP, as and for its Verified Complaint ("Complaint") of foreclosure of the premises and

mortgage against Defendant, Marcia Gordon, respectfully alleges upon information and belief as

follows:

## NATURE OF THE ACTION

1.      This is an action brought pursuant to New York Real Property Actions and

Proceedings Law, Section 1301 *et seq.*, to foreclose on a mortgage encumbering the property

commonly known as: **5302 Church Avenue, Brooklyn, NY 11203; Block: 4701, Lot: 1** in the

County of Kings, and State of New York (the "Subject Property"). The Legal Description of the

Subject Property is annexed hereto as **Exhibit "A"**.

## PARTIES

2.      Eastern Savings Bank, fsb is a federally chartered savings bank with its principal

place of business at 11350 McCormick Road, Hunt Valley, Maryland 21031.

3.      Marcia Gordon is, upon information and belief, a natural person and a Georgia State Resident, having an address at 6856 Wynpine Street, Stone Mountain, GA 30087-5529. Defendant, Marcia Gordon, is a necessary party defendant to this action by virtue of fact that she (i) executed the Note and Mortgage (as such terms are defined below), and (ii) is the titled and record owner of the Subject Property.

4.      New York City Environmental Control Board is upon information and belief a New York State Public Authority having an address at 100 Church Street, New York, New York 10007. Defendant New York City Environmental Control Board is a necessary party Defendant to this action by virtue of an unpaid Environmental Control Board lien in the amount of $1,000.00.  A copy of which is annexed hereto as **Exhibit "B"**.

5.      Each of the above-named Defendant(s) has or claims to have or may claim to have some interest in or lien upon said mortgaged premises or some part thereof, which interest or lien, if any, has accrued subsequent to, and is subject and subordinate to, the lien of said Mortgage.

## JURISDICTION AND VENUE

6.      This action is between citizens of different states. The amount in controversy, exclusive of interest and costs, exceeds $75,000.00.  Therefore, Jurisdiction is based upon diversity of citizenship pursuant to 28 U.S.C. §1332.

7.      Venue is deemed proper in this District pursuant to 28 U.S.C. §1391. A substantial part of the events giving rise to this action took place within the jurisdiction of this court and the Subject Property is located in this District.

## AS AND FOR A FIRST CAUSE OF ACTION

8.      On or about November 20, 2008, Defendant, Marcia Gordon, executed a Consolidated Secured Promissory Note (the "Note") in the principal amount of $362,705.47 in favor of Eastern

Savings Bank, fsb. A duly executed true and correct copy of the Note is annexed hereto as **Exhibit "C".**

9.      On or about November 20, 2008, Defendant, Marcia Gordon, executed a Mortgage Consolidation, Modification and Extension Agreement, Assignment of Leases and Rents and Security Agreement (the "Mortgage") in favor of Eastern which encumbers the Subject Property.

10.      Said Mortgage was duly recorded in the Office of the City Register of the City of New York Kings County on December 16, 2008 under CRFN: 2008000477101. A duly executed true and correct copy of the recorded Mortgage is annexed hereto as **Exhibit "D"**.

11.      A mortgage schedule setting forth the mortgages which were consolidated into this Mortgage and the pertinent recording information is annexed hereto as **Exhibit "E".**

12.      Any applicable recording tax was duly paid at the time of recording said Mortgage.

13.      Plaintiff is the owner and holder of said Note and Mortgage.

14.      Defendant, Marcia Gordon, has failed to comply with the terms and provisions of the said Mortgage and Note, by failing to make the monthly payments, each of which became due on the first (1st) day of the following respective months:  September, 2012 through April, 2014.

15.      The subject loan is not a "Home Loan" as evidenced by the Borrower's Affidavit executed by Marcia Gordon and annexed hereto as **Exhibit "F",** which reflects that the loan was made for commercial purposes.

16.      By virtue of Defendant, Marcia Gordon, continuing default under the Note and Mortgage, Plaintiff declares that the outstanding principal balance due under the Note together with all accrued interest thereon is immediately due and payable.

17.      Due to the above-described default, Defendant, Marcia Gordon, is indebted to Eastern pursuant to the terms of the Note and Mortgage as follows:

a.      As a result of the acceleration, the amounts that are now due and owing on said Note and Mortgage as of February 19, 2014, no part of any of which has been paid although duly demanded and is accurately reflected on the payoff statement (the "Payoff Statement") annexed hereto as **Exhibit "G"**, which was prepared from the records Eastern maintains in connection with this Loan.

b.      Attorney's fees and other costs and disbursements, payable to Eastern under the terms of the Note, which will accrue until the amount due and payable under the Note is paid in full; and

c.      Any and all additional fees that are due but not limited to protective advances or may become due and payable as provided under the terms and conditions of the Note and Mortgage are paid in full.

18.     Plaintiff requests that in the event that this action will proceed to judgment of foreclosure and sale, said premises should be sold subject to the following:

(a) Any state of facts that an inspection of the premises would disclose.

(b) Any state of facts that an accurate survey of the premises would show.

(c) Covenants, restrictions, easements and public utility agreements of record, if any.

(d) Building and zoning ordinances of the municipality in which the mortgaged premises are located and possible violations of same.

(e) Any rights of tenants or persons in possession of the subject premises.

(f) Any equity of redemption of the United States of America to redeem the premises within 120 days from date of sale.

(g) Prior mortgage liens of record held by and any advances and arrears thereunder.

(h) Prior lien(s) of record, if any.

19.     In the event that Eastern possesses any other lien(s) against said Subject Property

either by way of judgment, junior mortgage or otherwise, Eastern requests that such other lien(s) shall not be merged in Plaintiff's cause(s) of action set forth in this complaint, but that Plaintiff shall be permitted to enforce said other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money proceedings.

20.     Plaintiff shall not be deemed to have waived, altered, released or changed the election hereinbefore made, by reason of any payment after the commencement of this action, of any or all of the defaults mentioned herein, and such election shall continue and remain effective.

21.     Plaintiff believes that during the pendency of this action, in order to protect the security of the within Mortgage, it may be compelled to make advances to prior mortgagees, for installments of principal and interest if any, taxes, assessments, water rates, and/or fire insurance premiums that are or may become due or to the receiver of taxes, or to the fire insurance company, which advances are to be included in the balance due to Plaintiff, plus interest, as provided for in the within Mortgage foreclosed and deemed further secured thereby.

## AS AND FOR A SECOND CAUSE OF ACTION

22.     Plaintiff repeats, reiterates and re-alleges each and every allegation set forth in Paragraphs "1" through "21" of the Complaint.

23.     To further secure the Note referred to in paragraph 8, Plaintiff perfected a security interest against the personal property situated on the Property by filing a UCC1 in the Register's Office on December 16, 2008 under CRFN: 2008000477103, for the Property commonly known as 5302 Church Avenue, Brooklyn, NY 11203 (Block: 4701, Lot: 1), in Kings County, New York. A copy of the UCC1 is annexed hereto as **Exhibit "H"**.

24.     On October 11, 2013, a UCC3 Continuation was filed in the Register's Office under

CRFN: 2013000422235 as a continuation of the UCC1 originally filed on December 16, 2008 under

CRFN: 2008000477103, for the Property commonly known as 5302 Church Avenue, Brooklyn, NY

11203 (Block: 4701, Lot: 1), in Kings County, New York.  A copy of the UCC3 is annexed hereto as

**Exhibit "I"**.

      25.     By reason of the default under the Note and Mortgage, the obligations have become

due and payable and plaintiff is seeking foreclosure of the personal property located at the mortgaged

premises.

      26.     No other action or proceeding has been commenced or maintained or is now pending

at law or otherwise for the foreclosure of said Mortgage or for recovery of the said sum secured by

said Note and Mortgage or any part thereof.

      **WHEREFORE**, the Plaintiff demands judgment that the defendant(s) and each of them and

all persons claiming under them or any of them, subsequent to the commencement of this action and

the filing of a notice of pendency thereof, be barred and foreclosed of and from all estate, right, title,

interest, claim, lien and equity of redemption of, in and to the said Subject Property and each and

every part and parcel thereof; that the said premises may be decreed to be sold in one parcel,

according to law, subject to the terms set forth in Paragraph #18 of this Complaint; that the monies

arising from the sale thereof may be brought into court; that the Plaintiff may be paid the amount due

on the Note and Mortgage as hereinbefore set forth, with interest and late charges to the time of such

payment and the expenses of such sale, plus reasonable attorney's fees, together with the costs,

allowances and disbursements of this action, and together with any sums incurred by Plaintiff

pursuant to any term or provision of the Note and Mortgage set forth in this Complaint, or to protect

the lien of Plaintiff's Mortgage, together with interest upon said sums from the dates of the respective

payments and advances thereof, so far as the amount of such monies properly applicable thereto will

pay the same; that this Court forthwith appoint a receiver of the rents and profits of said premises, during the pendency of this action with the usual powers and duties; and that the Defendant, Marcia Gordon, may be adjudged to pay the whole residue, or so much thereof as the Court may determine to be just and equitable, of the debt remaining unsatisfied after a sale of the mortgaged premises and the application of the proceeds pursuant to the directions contained in such judgment, and that in the event that Plaintiff possesses any other lien(s) against said mortgaged premises either by way of judgment, junior mortgage or otherwise, Plaintiff requests that such other lien(s) shall not be merged in Plaintiff's cause(s) of action set forth in this Complaint but that Plaintiff shall be permitted to enforce said other lien(s) and/or seek determination of priority thereof in any independent action(s) or proceeding(s), including, without limitation, any surplus money proceedings, that an order be entered compelling that the tenants deliver possession of the premises to Plaintiff, and that the Plaintiff may have such other and further relief, or both, in the premises, as may be just and equitable.

Dated: New York, New York
     April 21, 2014

Yours, etc.
**Kriss & Feuerstein LLP**
Attorneys for Plaintiff

By: _____
     Jerold C. Feuerstein, Esq. (JF9829)
     360 Lexington Avenue - Suite 1200
     New York, New York 10017
     (212) 661-2900

<u>**VERIFICATION BY ATTORNEY**</u>

**JEROLD C. FEUERSTEIN**, an attorney duly admitted to practice before the courts of this state and associated with the attorneys of record for the plaintiff, affirms under the penalties of perjury that:  I have read the foregoing Complaint and the same is true to my own knowledge except as to matters alleged to upon information and belief as to those matters I believe them to be true. The grounds of my belief as to matters not based upon personal knowledge are communications with plaintiff or officers and/or agents of plaintiff and copies of plaintiff's records in my possession.  This affirmation is made by me because plaintiff is not in a county in which my firm has its office.

Dated: New York, New York
       April 21, 2014

_____
JEROLD C. FEUERSTEIN (JF9829)



**First American Title Insurance Company of New York**

Title No. 3008-254

### SCHEDULE "A"

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF BROOKLYN, COUNTY OF KINGS, CITY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF CHURCH AVENUE AND THE EASTERLY SIDE OF EAST 53RD STREET;

RUNNING THENCE EASTERLY ALONG THE SOUTHERLY SIDE OF CHURCH AVENUE, 20.01 FEET;

THENCE SOUTHERLY PARALLEL WITH EAST 53RD STREET THROUGH A PARTY WALL, 82.24 FEET;

THENCE WESTERLY PARALLEL WITH SNYDER AVENUE, 20 FEET TO THE EASTERLY SIDE OF EAST 53RD STREET;

THENCE NORTHERLY ALONG THE EASTERLY SIDE OF EAST 53RD STREET, 81.87 FEET TO THE CORNER, THE POINT OR PLACE OF BEGINNING.

**THE** policy to be issued under this report will insure the title to such buildings and improvements erected on the premises, which by law constitute real property.

**FOR CONVEYANCING ONLY: TOGETHER** with all the right, title and interest of the party of the first part, of in and to the land lying in the street in front of and adjoining said premises.

Environmental Control Board (Fire and Building) - Ending Date 02/28/13)

Search Parameters- Last:gordon     First:mar

MARCIA GORDON
5302 CHURCH AVENUE
 11203
ECB Violation No.: 11049309M      Date-01/09

Amt: $1,000.00
----------------------------------------------------------------
END RETURNS
****************************************************************

Federal Tax Liens from ( 01/94 - 03/22/13 )

Manhattan, Bronx, Queens, Kings County
Search Parameters- Last:gordon     First:mar

END RETURNS
****************************************************************

TAB - (Transit Adjudication Bureau - from 06/04/1986 to 02/15/13)

Search Parameters- Last:gordon     First:mar

END RETURNS
****************************************************************

CONSOLIDATED SECURED PROMISSORY NOTE

in the principal amount of

**$362,705.47**

BY

**MARCIA GORDON**

TO

**EASTERN SAVINGS BANK, FSB**

**November 20, 2008**

1

## CONSOLIDATED SECURED PROMISSORY NOTE

$362,705.47

November 20, 2008
_DeKalb_ , Georgia

FOR VALUE RECEIVED, MARCIA GORDON, an individual having an address of 6856 Winpine Street, Stone Mountain, GA 30087 (the "**Maker**"), promises to pay to the order of EASTERN SAVINGS BANK, FSB, a federally chartered savings bank, having an address at Executive Plaza 2, 11350 McCormick Road, Suite 200, Hunt Valley, Maryland 21031 (hereinafter referred to, together with each subsequent holder(s) hereof, as "**Holder**"), at the above address, or at such other place as Holder may designate in writing, the principal sum of **THREE HUNDRED SIXTY-TWO THOUSAND SEVEN HUNDRED FIVE AND 47/100 DOLLARS ($362,705.47)** (the "**Principal Sum**"), with interest thereon computed from the date hereof until maturity, whether on the Maturity Date (as hereinafter defined), by acceleration, or otherwise, at the rate equal to NINE and 49/100 (9.49%) percent per annum, (the "**Interest Rate**") and thereafter at the Default Rate (as hereinafter defined), together with any costs, expenses and attorneys' fees incurred by Holder pursuant to the provisions hereof.

1.      **Consolidated Secured Promissory Note**. This Consolidated Secured Promissory Note ("**Note**") is secured by, among other things, by that certain Mortgage Consolidation, Modification and Extension Agreement, Assignment of Leases and Rents and Security Agreement of even date herewith (the "**Mortgage**", as consolidated), granted by Maker pursuant to which Maker has mortgaged to Holder its property located in the Borough of Brooklyn, City of New York, County of Kings, State of New York and known by the street address(es) of 5302 Church Avenue, Brooklyn, NY 11203 (the "**Property**"), and by certain other documents executed by Maker as additional security for the repayment of the sums due under the Note and Mortgage (the "**Loan Documents**"). Maker has made and/or hereby assumes the notes as described on Schedule A annexed hereto and made a part hereof. The sums due under such notes are hereby consolidated into this Note so that there is now due and owing from Maker to Holder the Principal Sum of $362,705.47, which Principal Sum is due in accordance with the terms of this Note. All the terms and conditions of the consolidated notes are hereby modified and amended in accordance with the terms of this Note.

2.      **Payments**. The Principal Sum and interest thereon is and shall be payable as follows:

Maker shall pay to Holder commencing December 20, 2008, and on the twentieth (20th) day of each and every month thereafter through and including November 20, 2038 (such date, or such earlier date on which Holder accelerates payment of the indebtedness evidenced hereby pursuant to the provisions hereof or of any of Loan Documents as such term is defined in the Mortgage) being herein referred to as the "**Maturity Date**", monthly payments, in arrears, of principal and interest, in the amount of THREE THOUSAND FORTY-SEVEN AND 18/100 ($3,047.18) DOLLARS, on the unpaid balance of the Principal Sum, continuing monthly until the Maturity Date. On the Maturity Date, whether by acceleration, prepayment, or otherwise, the

2

outstanding balance of the Principal Sum, together with accrued and unpaid interest and any other amounts due and payable to the Holder hereunder, under the Mortgage or the Loan Documents, shall be paid in full. Interest shall for all purposes hereunder be calculated on the basis of a three hundred sixty (360) day year and charged on the basis of a three hundred sixty-five (365) or three hundred sixty-six (366) day year counting the actual number of days elapsed.

Notwithstanding the Maturity Date set forth above, Holder may, at its sole option, on ninety (90) days prior written notice to Maker, declare and demand the unpaid principal balance, interest and fees due under this Note to be immediately due and payable on the first day of the first full calendar month following the five (5) year anniversary of the Funding Date (the "Call Date"), whether or not Maker is then or at any time prior thereto has been in default under the Note, the Mortgage or the Loan Documents and thereafter, Holder may, at its sole option, on ninety (90) days prior written notice to Maker, declare and demand the unpaid principal balance, interest and fees due under this Note to be immediately due and payable, upon each year anniversary of the Call Date until the Maturity Date, whether or not Maker is then or at any time prior thereto has been in default under the Loan Documents.

3.    Prepayment. PROVIDED THAT THERE SHALL BE NO EVENT OF DEFAULT (AS HEREINAFTER DEFINED) OUTSTANDING UNDER THIS NOTE, THE DEED OF TRUST OR ANY OF THE LOAN DOCUMENTS, THE OUTSTANDING BALANCE OF THE PRINCIPAL SUM SHALL BE PRE-PAYABLE AT ANY TIME ON THIRTY (30) DAYS NOTICE TO HOLDER, IN WHOLE OR IN PART, PROVIDED THAT SUCH PREPAYMENT SHALL BE ACCOMPANIED BY A SUM OF MONEY (THE "PREPAYMENT PREMIUM") CALCULATED AS FOLLOWS:

IF THE LOAN IS PREPAID AT ANY TIME BETWEEN THE FUNDING DATE (WHICH SHALL BE THE DATE HEREOF) AND THE FIRST DAY OF THE FIRST FULL CALENDAR MONTH FOLLOWING THE TWO (2) YEAR ANNIVERSARY OF THE FUNDING DATE, THE PREPAYMENT PREMIUM SHALL BE A SUM IN THE AMOUNT EQUAL TO SIX (6) MONTHS OF INTEREST WHICH WOULD HAVE BEEN DUE AND PAYABLE ON THE PRINCIPAL SUM PREPAID. IF THE NOTE IS PREPAID ANYTIME AFTER THE FIRST DAY OF THE FIRST FULL CALENDAR MONTH FOLLOWING THE TWO (2) YEAR ANNIVERSARY OF THE FUNDING DATE THROUGH THE MATURITY DATE NO PREPAYMENT PREMIUM SHALL BE DUE.

SUCH PREPAYMENT SHALL BE PAID WHETHER THE PREPAYMENT IS VOLUNTARY OR INVOLUNTARY, INCLUDING ANY PREPAYMENT AFFECTED BY THE ACCELERATION PROVISIONS CONTAINED IN THE NOTE OR DEED OF TRUST. PROVIDED, HOWEVER, IF SUCH PREPAYMENT PREMIUM CONSTITUTES INTEREST UNDER APPLICABLE LAW, THE AMOUNT OF SUCH PREPAYMENT PREMIUM WILL BE REDUCED TO AN AMOUNT WHICH, WHEN ADDED TO ALL OTHER AMOUNTS WHICH CONSTITUTE INTEREST UNDER APPLICABLE LAW, WILL NOT EXCEED THE MAXIMUM AMOUNT OF INTEREST WHICH MAY BE CONTRACTED FOR,

CHARGED OR RECEIVED WITH RESPECT TO THE LOAN EVIDENCED HEREBY UNDER APPLICABLE LAW FOR THE ACTUAL PERIOD TIME OF SUCH LOAN IS OUTSTANDING.

4.     **Default**.

4.1     **Events of Default**. The failure to make any payment required under this Note or the occurrence of any Event of Default under any of the Loan Documents shall constitute an Event of Default under this Note.

4.2     **Remedies**. Upon the occurrence of an Event of Default: (a) interest shall accrue hereunder at the Default Rate (as hereinafter defined) through and after the entry of the judgment of foreclose and the delivery of the referee's deed in a foreclosure action , (b) Holder may, at its option, without any written notice given to the Maker (such notice being expressly waived), DECLARE AND DEMAND this Note immediately due and payable and (c) Holder may pursue all rights and remedies available hereunder or under the Mortgage or any of the Loan Documents. Holder's rights, remedies and powers, as provided in this Note, the Mortgage and the Loan Documents are cumulative and concurrent, and may be pursued singly, successively or together against Maker, the Property or any guarantor of the indebtedness evidenced hereby or any other collateral security given at any time to secure the payment hereof, all at the sole discretion of Holder. Additionally, Holder may resort to every other right or remedy available at law or in equity without first exhausting the rights and remedies contained herein, all in Holder's sole discretion. Failure of Holder, for any period of time or on more than one occasion, to declare and demand this Note immediately due and payable shall not constitute a waiver of the right to exercise the same at any time from and after any Event of Default.

4.3     **Costs of Collection**. Maker agrees to pay all costs and expenses of collection incurred by Holder, in addition to principal and interest (including, without limitation, reasonable attorneys' fees and disbursements), and including all costs and expenses incurred in connection with the pursuit by Holder of any of its rights or remedies hereunder or under the Loan Documents or the protection of or realization of collateral or in connection with any of Holder's collection efforts, whether or not any action or proceeding on this Note, on the Loan Documents or any foreclosure proceeding is filed, all such costs and expenses being payable on demand, together with interest at the Default Rate thereon and being secured by the Loan Documents.

4.4     **Default Rate and Late Charges**. From and after the occurrence of an Event of Default, regardless of whether or not there has been a notice of default issued by Holder, interest shall accrue on the outstanding Principal Sum at a rate equal to twenty-four percent (24%) per annum (the "**Default Rate**"). The Default Rate shall remain in effect until any and all Events of Default shall have been cured. In addition, the Default Rate shall remain in effect during any period of default even upon the acceleration of the indebtedness evidenced by this Note. The Default rate shall be in effect at all times after the maturity of the indebtedness evidenced by this Note (whether by acceleration or otherwise). Upon acceleration or maturity, the Default Rate shall remain in effect until all sums due under this Note, the Mortgage and the

Loan Documents shall have been paid in full. Holder may collect a late payment fee not to exceed an amount equal to ten percent (10%) of any periodic payment not received within ten (10) days of the date such payment is due and payable, said charge constituting liquidated damages, to be assessed from the date upon which such payment was due and payable, and being payable upon demand. Interest shall continue to accrue at the Default Rate (including following the entry of a judgment in favor or Holder) until payment full of all sums due under this Note, the Mortgage or any of the Loan Documents. In addition, Maker shall pay to Holder the sum of $15.00 for any payment which is returned for any reason by Maker's bank unpaid. Further, if Maker remits any payment to Holder under this Note, the Mortgage or the Loan Documents which is returned for any reason by Maker's bank unpaid, Holder may, in its sole and absolute discretion, require Maker to remit all future payments due under this Note, the Mortgage or the Loan Documents in the form of a certified or cashier's check made payable to Holder.

5.    **Governing Law: Severability**.  This Note shall be construed and enforced in accordance with the internal laws of the State of New York, unless preempted by Federal Law or United States Statute. The invalidity, illegality or unenforceability of any provision of this Note shall not affect or impair the validity, legality or enforceability of the remainder of this Note, and to this end, the provisions of this Note are declared to be severable.

6.    **Waivers**.  Without limiting any other provisions of the Mortgage or the Loan Documents, Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby waives presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest and protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note, except as expressly provided herein or in the Mortgage or any of the Loan Documents, and in connection with any suit, action or proceeding brought by Holder on this Note, any and every right it may have to (a) a trial by jury, (b) interpose any counterclaim therein (other than a counterclaim which can only be asserted in a suit, action or proceeding brought by Holder on this Note and cannot be maintained in a separate action), and (c) have the same consolidated with any other or separate suit, action or proceeding, and agrees that their respective liability shall be unconditional and without regard to the liability of any other party and shall not be in any manner affected by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Holder. Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby consents to every extension of time, renewal, waiver or modification that may be granted by Holder with respect to the payment or other provisions of this Note, and to the release of any makers, endorsers, guarantors or sureties, and their heirs, legal representatives, successors and assigns, and of any collateral given to secure the payment hereof, or any part hereof, with or without substitution, and agrees that additional makers, endorsers, guarantors or sureties and their heirs, legal representatives, successors and assigns, may become parties hereto without notice to Maker or to any endorser, guarantor or surety and without affecting the liability of any of them.

7.    **Application of Payments**. Each and every payment made by Maker to Holder in accordance with the terms of the Mortgage and the Loan Documents and all other proceeds

5

received by Holder with respect to the indebtedness evidenced hereby, shall be applied as follows: (a) first, if applicable in accordance with the terms of this Note, to all premiums and other sums payable hereunder or under the Mortgage or any of the Loan Documents (other than pursuant to subdivisions (b) or (c) of this Section 7), (b) second, to all interest at the Interest Rate which shall be due and payable under this Note, and (c) third, in reduction of the outstanding balance of the Principal Sum, or in such other order and priority as determined by Holder in its sole discretion. To the extent that Maker makes a payment or Holder receives any payment or proceeds for Maker's benefit, which are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, debtor in possession, receiver, custodian or any other party under any bankruptcy law, common law or equitable cause, then, to such extent, the obligations of Maker hereunder intended to be satisfied shall be revived and continue as if such payment or proceeds had not been received by Holder.

8.    **Miscellaneous.**

8.1.    **Amendments.** This Note may not be terminated or amended orally, but only by a termination or amendment in writing signed by Holder.

8.2.    **Usury.** It is the intention of Maker and Holder to conform strictly to the usury and other laws relating to interest from time to time in force, and all agreements between Maker and Holder, whether now existing or hereafter arising and whether oral or written, are hereby expressly limited so that in no contingency or event whatsoever, whether by demand hereunder or otherwise, shall the amount paid or agreed to be paid to Holder, or collected by Holder for the use, forbearance or detention of the money to be loaned hereunder, or for the payment or performance of any covenant or obligation contained herein or in the Mortgage or in any other agreement given to secure the loan obligations or in any other document evidencing, securing or pertaining to the loan obligations, exceed the maximum amount of interest allowable under applicable law (the **"Maximum Amount"**). If under any circumstances whatsoever fulfillment of any provision hereof or the Mortgage, at the time performance of such provision shall be due, shall involve transcending the Maximum Amount, then ipso facto, the obligation to be fulfilled shall be reduced to the Maximum Amount. For the purposes of calculating the actual amount of interest paid and or payable, in respect of laws pertaining to usury or such other laws, all sums paid or agreed to be paid to Holder for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, allocated and spread from the date of disbursement of the proceeds thereof until payment in full of the loan obligations, so that the actual rate of interest on account thereof is uniform throughout the term hereof. If under any circumstances Holder shall ever receive an amount deemed interest by applicable law, which would exceed the Maximum Amount, such amount that would be excessive interest under applicable usury laws shall be deemed a payment in reduction of the principal amount owing under this Note and shall be so applied to principal and not to the payment of interest, or if such excessive interest shall be deemed to have been a payment made by mistake and shall be refunded to Maker or to any other person making such payment on Maker's behalf.

8.3.    **Captions.** The captions of the Sections of this Note are for convenience of

6

reference only and shall not be deemed to modify, explain, enlarge or restrict any of the provisions hereof.

        8.4.    **Notices**. Notices shall be given under this Note in conformity with the terms and conditions of the Mortgage, Assignment of Leases and Rents and Security Agreement.

        8.5    **Joint and Several Obligations**. The obligations of Maker under this Note shall be joint and several obligations of Maker and of each Maker, if more than one, and of each Maker's heirs, personal representatives, successors and assigns. The filing of a petition (the "Petition") under Chapter 11 of the United States Code (the "**Bankruptcy Code**"), whether voluntary or involuntary, shall not stay or in any manner abridge or interfere with the right of Holder to proceed against any Maker not subject to such Petition.

        8.6    **Time of Essence**. Time is of the essence of this Note and the performance of each of the covenants and agreements on Maker's part to be performed hereunder.

        8.7    **No Waiver by Holder**. Neither the exercise of any provision hereof nor the delay in asserting any right granted to Holder (including the acceptance of past due payments) shall be construed as a waiver by Holder of the right to accelerate the indebtedness evidenced hereby as above provided or to pursue any other remedies available under this Note, the Loan Documents or under any other security document nor shall the exercise of any single or partial exercise of any right, power, privilege or remedy preclude any further exercise thereof. Any waiver hereunder shall be valid and enforceable only if in writing and signed by the party against whom enforcement is sought, and then only to the extent therein set forth. The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law and may be exercised singly or concurrently. No executory agreement unless in writing and signed by Holder, and no course of dealing between Maker, the endorser(s) or guarantor(s) hereof, or any of them, shall be effective to change or modify or discharge, in whole or in part, this Note.

        In the event Holder shall advance or cause to be advanced any amounts to or for the benefit of Maker, on account of insurance premiums, real estate or other taxes, assessments or governmental charges or on account of any other matter which, in the sole discretion of Holder is necessary or desirable to sustain the lien of the Loan Documents or protect any collateral security held by Holder or the Maker's assets, including, but not limited to, payments to avoid the filing of any lien on any of Maker's assets and/or payments to discharge any such lien, the same shall be deemed a part of the Principal Sum and shall bear interest at the Interest Rate until paid in full.

        8.8.    **Obligations**. Maker acknowledges that this Note and Maker's obligations hereunder are and shall at all times continue to be absolute and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which might otherwise constitute a defense to this Note and the obligations of Maker hereunder or the obligations of any other person or party relating to this Note or the obligations of Maker hereunder. This Note sets forth the entire agreement and

7

understanding of Holder and Maker, and Maker absolutely, unconditionally and irrevocably waives any and all right to assert any defense, setoff, counterclaim or cross-claim of any nature whatsoever with respect hereto or the obligations of Maker hereunder or the obligations of any other person or party relating hereto in any action or proceeding brought by Holder to collect the outstanding balance of the Principal Sum, accrued and unpaid interest, late charges, and other amounts owing, or any portion thereof, or to enforce, foreclose and realize upon the liens and security interests created by the Loan Documents and any other security document.

      8.9    **Use of Funds.** Maker hereby warrants, represents and covenants that no funds disbursed hereunder shall be used for personal family or household purposes.

      9.    **Participations.** Holder, at any time and without the consent of Maker, may grant participations in or sell, transfer, assign and convey all or any portion of its right, title and interest in and to the loan obligations, this Note and the Mortgage, any guaranties given in connection with the loan obligations and any collateral given to secure the loan obligations.

      **10.**    **Venue; Service of Process**. All actions or proceedings arising in connection with this Note shall be tried and litigated in state or federal courts located in the State of New York, unless such actions or proceedings are required to be brought in another court to obtain subject matter jurisdiction over the matter in controversy. MAKER WAIVES ANY RIGHT IT MAY HAVE TO ASSERT THE DOCTRINE OF FORUM NON CONVENIENS, TO ASSERT THAT IT IS NOT SUBJECT TO THE JURISDICTION OF SUCH COURTS OR TO OBJECT TO VENUE TO THE EXTENT ANY PROCEEDING IS BROUGHT IN ACCORDANCE HEREWITH. IN ANY ACTION AGAINST MAKER, SERVICE OF PROCESS MAY BE MADE UPON MAKER BY REGISTERED OR CERTIFIED MAIL, RETURN RECEIPT REQUESTED, TO ITS ADDRESS ABOVE SET FORTH, WHICH SERVICE SHALL BE DEEMED SUFFICIENT FOR PERSONAL JURISDICTION AND SHALL BE DEEMED EFFECTIVE THREE (3) DAYS AFTER MAILING.

      11.    **Jury Trial Waiver.** MAKER, AND HOLDER BY ITS ACCEPTANCE OF THIS NOTE, HEREBY WAIVE THEIR RESPECTIVE RIGHTS TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING BASED UPON, OR RELATED TO, THE SUBJECT MATTER OF THIS NOTE AND THE BUSINESS RELATIONSHIP THAT IS BEING ESTABLISHED. THIS WAIVER IS KNOWINGLY, INTENTIONALLY AND VOLUNTARILY MADE BY MAKER AND BY HOLDER; AND MAKER ACKNOWLEDGES THAT NEITHER HOLDER NOR ANY PERSON ACTING ON BEHALF OF HOLDER HAS MADE ANY REPRESENTATIONS OF FACT TO INCLUDE THIS WAIVER OF TRIAL BY JURY OR HAS TAKEN ANY ACTIONS WHICH IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. MAKER AND HOLDER ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT MAKER AND HOLDER HAVE ALREADY RELIED ON THIS WAIVER IN ENTERING INTO THIS NOTE AND THAT EACH OF THEM WILL CONTINUE TO RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS. MAKER AND HOLDER FURTHER ACKNOWLEDGE THAT THEY HAVE BEEN

REPRESENTED (OR HAVE HAD THE OPPORTUNITY TO BE REPRESENTED) IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL.

      12.    **Unpaid Loan Fees**.  As of the date hereof, Maker owes to Holder, default interest in the sum $60,373.28 as of October 19, 2008 (the "Accrued Default Interest").  If Maker makes twelve (12) consecutive monthly payments within ten (10) days of the date such payments are due and payable pursuant to this Note, Holder will waive fifty (50%) percent of the Accrued Default Interest.  In addition thereto, Maker owes to Holder attorneys' fees in the sum of $1,500.00, interest as of October 19, 2008 in the sum of $17,574.59, interest on negative escrow in the sum of $1,286.93, late charges in the sum of $4,046.60 and title company and closer fees in the sum of $7,983.05 (the aggregate of same in the sum of $92,764.45 being the "Unpaid Loan Fees").  Holder has agreed to defer payment of the Unpaid Loan Fees and the balance of the Accrued Default Interest (in accordance with this paragraph 12) until the earlier of (i) the Maturity Date; (ii) an Event of Default under the Loan Documents; or (iii) the prepayment of the entire balance of the loan as evidenced by this Note, the Mortgage and the Loan Documents.

9

IN WITNESS WHEREOF, Maker has caused this Note to be executed as of the day and year first above written.

MARCIA GORDON

STATE OF GEORGIA                    )
                                    ) ss:
COUNTY OF Dekalb                    )

On the 20th day of November in the year 2008, before me, the undersigned, a Notary Public in and for said State, personally appeared, MARCIA GORDON, sworn to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

Notary Public

K G HUGHES
MY COMMISSION EXPIRES
MAY
07
2011
HENRY CO., GEORGIA
NOTARY PUBLIC

10

## SCHEDULE A

1. NOTE made by MARCIA GORDON  -to- EASTERN SAVINGS BANK, FSB, dated March 31, 2006 in the Principal Sum of $335,000.00 and interest, which Principal Sum has been reduced to the current amount of $332,626.28.

2. GAP NOTE made by MARCIA GORDON -to- EASTERN SAVINGS BANK, FSB, dated November 20, 2008, in the principal sum of $30,079.19 and interest.

   CONSOLIDATED SECURED PROMISSORY NOTE made by MARCIA GORDON -to- EASTERN SAVINGS BANK, FSB dated November 20, 2008.

   Consolidates Notes 1 and 2 in the principal sum of $362,705.47.

11

## NYC DEPARTMENT OF FINANCE
## OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.



2008121000341002001EB2C5

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 42 |
|---|---|

| Document ID: 2008121000341002 | Document Date: 11-20-2008 | Preparation Date: 12-10-2008 |
|---|---|---|

Document Type: AGREEMENT
Document Page Count: 40

| PRESENTER: | RETURN TO: |
|---|---|
| FIRST AMERICAN TITLE INS. CO., HUDSON VALLEY 1 WATER STREET (PICK-UP BY GAIL SULLIVAN) 3008-254963(IS) WHITE PLAINS, NY 10601 914-428-3433 isavundranayagam@firstam.com | KRISS & FEUERSTEIN LLP ATTN: JEROLD C. FEUERSTEIN, ESQ. 360 LEXINGTON AVENUE (PICK-UP BY 1ST AMERICAN) NEW YORK, NY 10017 |

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 4701 | 1 | Entire Lot | 5302 CHURCH AVENUE |

Property Type: 1-3 FAMILY WITH STORE / OFFICE

### CROSS REFERENCE DATA

CRFN: 2006000220034

x  Additional  Cross References on Continuation  Page

### PARTIES

| PARTY 1: | PARTY 2: |
|---|---|
| MARCIA GORDON 6856 WINPINE STREET STONE MOUNTAIN, GA 30087 | EASTERN SAVINGS BANK, FSB EXECUTIVE PLAZA 2, 11350 MCCORMICK ROAD, SUITE 200 HUNT VALLEY, MO 21031 |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 362,705.47 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | 255 | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 237.00 | | | |
| Affidavit Fee: | $ | 8.00 | | | |

RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK

Recorded/Filed       12-16-2008 11:17
City Register File No.(CRFN):
**2008000477101**

*Annette M Hill*

*City Register Official Signature*

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2008121000341002001CB045

| RECORDING AND ENDORSEMENT COVER PAGE (CONTINUATION) | | PAGE 2 OF 42 |
|---|---|---|
| Document ID: 2008121000341002 | Document Date: 11-20-2008 | Preparation Date: 12-10-2008 |
| Document Type: AGREEMENT | | |

**CROSS REFERENCE DATA**
Document ID: 2008121000341001

**MORTGAGE CONSOLIDATION, MODIFICATION AND EXTENSION AGREEMENT,**
**ASSIGNMENT OF LEASES AND RENTS**
**AND SECURITY AGREEMENT**


**MARCIA GORDON**
**(Mortgagor)**

to

**EASTERN SAVINGS BANK, FSB**
**(Mortgagee)**


**Dated as of: November 20, 2008**


**Property Address(es):**

**5302 Church Avenue**
**Brooklyn, NY 11203**

**Block:** 4701
**Lot:** 1
**County:** Kings
**State:** New York

3008-25493

First American Title Ins. Co. of NY
One Water Street  2nd Floor
White Plains, New York 10601
(914) 428-3433


**DOCUMENT PREPARED BY AND WHEN RECORDED, RETURN TO:**

**Kriss & Feuerstein LLP**
**360 Lexington Avenue, 12th Floor**
**New York, New York 10017**

40

THIS MORTGAGE **DOES / DOES NOT (CIRCLE ONE)** ENCUMBER REAL PROPERTY PRINCIPALLY IMPROVED OR TO BE IMPROVED BY ONE OR MORE STRUCTURES CONTAINING IN THE AGGREGATE NOT MORE THAN SIX (6) RESIDENTIAL DWELLING UNITS HAVING THEIR OWN SEPARATE COOKING FACILITIES.

      **THIS MORTGAGE CONSOLIDATION, MODIFICATION AND EXTENSION AGREEMENT, ASSIGNMENT OF LEASES AND RENTS, AND SECURITY AGREEMENT ("Mortgage"),** dated the 20th day of November, 2008, by and between MARCIA GORDON, an individual having an address of 6856 Winpine Street, Stone Mountain, GA 30087 ("**Mortgagor**"), and EASTERN SAVINGS BANK, FSB, a federally chartered savings bank, having an address at Executive Plaza 2, 11350 McCormick Road, Suite 200, Hunt Valley, Maryland 21031 ("**Mortgagee**").

WITNESSETH:

      **WHEREAS**, the Mortgagor is the owner in fee simple of the parcel of land and the improvements thereon known as the Mortgaged Property, as hereinafter further defined; and

      **WHEREAS**, the Mortgagee, by assignment or otherwise, is the owner and holder of those certain notes (the "**Existing Notes**") and the mortgages (the "**Existing Mortgages**") securing the same as set forth on the attached <u>Schedule B</u>; and

      **WHEREAS**, the Mortgagor is now indebted to the Mortgagee in the principal sum of THREE HUNDRED SIXTY-TWO THOUSAND SEVEN HUNDRED FIVE AND 47/100 DOLLARS ($362,705.47) lawful money of the United States of America (the "**Debt**"), as aforesaid, with interest thereon at the rate of NINE and 49/100 (9.49%) percent per annum from the 18th day of November, 2008, secured by the notes and the mortgages, the terms of which are evidenced in that certain Consolidated Secured Promissory Note of even date herewith (the "**Consolidated Note**" or "**Note**"); and

      **WHEREAS**, the Mortgagor and the Mortgagee desire to modify, combine, consolidate, extend and restate the terms of the Existing Mortgages, so as to create solely one mortgage and one lien covering the entire Mortgaged Property and each parcel constituting the Mortgaged Property and to restate the terms and conditions of the Existing Mortgages in their entirety, in the manner hereinafter set forth, so that all of the terms and conditions contained in this Mortgage shall supersede and control the terms and conditions of the Existing Mortgages (it being agreed that the execution of this Mortgage shall not impair the lien secured by the Existing Mortgages).

      **WHEREAS**, the Mortgagor and the Mortgagee further desire to modify and extend the time and manner of payment of the Debt as set forth in the Existing Notes, as hereinafter provided so that the Debt shall be paid in accordance with the terms and conditions set forth in the Consolidated Note in monthly payments of principal, interest, taxes and insurance commencing on November 20, 2008, as fully set forth in the Note and shall mature, subject to acceleration as provided for in the Consolidated Note and this Agreement, on November 20, 2038;

2

NOW, **THEREFORE,** in consideration of the Mortgaged Property and the mutual covenants and agreements of the parties and the sum of Ten and 00/100 ($10.00) Dollars to each party by the other in hand paid, the receipt and sufficiency of which are hereby acknowledged, and for the purposes of carrying out the intentions as expressed, the Mortgagor and the Mortgagee hereby covenant and agree as follows:

1.    The liens of the mortgages described on the annexed Mortgage Schedule "B" are hereby modified and consolidated so that the same shall and now do constitute a valid single first mortgage securing the principal sum of $362,705.47 with interest and all other sums due under the Note, hereunder and under the other Loan Documents (hereinafter defined). All of the terms and conditions set forth in the mortgages as consolidated by this Agreement are hereby modified and replaced by the terms and conditions set forth in this Agreement and such mortgages and liens created thereby are consolidated and coordinated so that together they shall hereafter constitute in law but one mortgage and a single lien securing the Debt which Debt has been spread pursuant to the terms of this Agreement to encumber each Property constituting the Mortgaged Property.

3.    The Mortgagor shall pay to the Mortgagee the sums due and owing pursuant to the Consolidated Note secured by this Mortgage in accordance with the terms of the Consolidated Note and this Mortgage. The Mortgagor hereby assumes the obligations under the Existing Notes and Existing Mortgages as of the date hereof.

4.    Mortgagor hereby warrants and confirms to Mortgagee that Mortgagor has mortgaged, given, granted, bargained, sold, alienated, enfeoffed, conveyed, confirmed, warranted, pledged, assigned, and hypothecated and by these presents does hereby mortgage, give, grant, bargain, sell, alien, enfeoff, convey, confirm, warrant, pledge, assign and hypothecate unto Mortgagee all of the real properties described in Schedule "A", attached hereto (collectively, the **"Premises"**), and the buildings, structures, fixtures, additions, enlargements, extensions, modifications, repairs, replacements and improvements now or hereafter located thereon (the **"Improvements"**);

TOGETHER WITH: all right, title, interest and estate of Mortgagor now owned, or hereafter acquired, in and to the following property, rights, interests and estates (the Premises, the Improvements, and the property, rights, interests and estates hereinafter described are collectively referred to herein as the **"Mortgaged Property"**):

(a)        all easements, rights-of-way, strips and gores of land, streets, ways, alleys, passages, sewer rights, water, water courses, water rights and powers, air rights and development rights, all rights to oil, gas, minerals, coal and other substances of any kind or character, and all estates, rights, titles, interests, privileges, liberties, tenements, hereditaments and appurtenances of any nature whatsoever, in any way belonging, relating or pertaining to the Premises and the Improvements and the reversion and reversions, remainder and remainders, and all land lying in the bed of any street, road, highway, alley or avenue, opened, vacated or proposed, in front of or adjoining the Premises, to the center line thereof and all the estates, rights, titles, interests, dower and rights of dower, curtsey and rights of curtsey, property, possession, claim and demand whatsoever, both at law and in equity, of Mortgagor of, in and to

3

the Premises and the Improvements and every part and parcel thereof, with the appurtenances thereto;

(b)        all machinery, furniture, furnishings, equipment, computer software and hardware, fixtures (including, without limitation, all heating, air conditioning, plumbing, lighting, communications and elevator fixtures) and other property of every kind and nature, whether tangible or intangible, whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, and usable in connection with the present or future operation and occupancy of the Premises and the Improvements and all building equipment, materials and supplies of any nature whatsoever owned by Mortgagor, or in which Mortgagor has or shall have an interest, now or hereafter located upon the Premises and the Improvements, or appurtenant thereto, or usable in connection with the present or future operation, enjoyment and occupancy of the Premises and the Improvements (hereinafter collectively referred to as the **"Equipment"**), including any leases of any of the foregoing, any deposits existing at any time in connection with any of the foregoing, and the proceeds of any sale or transfer of the foregoing, and the right, title and interest of Mortgagor in and to any of the Equipment that may be subject to any "security interests" as defined in the Uniform Commercial Code, as adopted and enacted by the State or States where any of the Mortgaged Property is located (the **"Uniform Commercial Code"**), superior in lien to the lien of this Mortgage;

(c)        all awards or payments, including interest thereon, that may heretofore and hereafter be made with respect to the Premises and the Improvements, whether from the exercise of the right of eminent domain or condemnation (including, without limitation, any transfer made in lieu of or in anticipation of the exercise of said rights), or for a change of grade, or for any other injury to or decrease in the value of the Premises and Improvements;

(d)        all leases and other agreements or arrangements heretofore or hereafter entered into affecting the use, enjoyment or occupancy of, or the conduct of any activity upon or in, the Premises and the Improvements, including any extensions, renewals, modifications or amendments thereof (hereinafter collectively referred to as the "Leases") and all rents, rent equivalents, moneys payable as damages or in lieu of rent or rent equivalents, royalties (including, without limitation, all oil and gas or other mineral royalties and bonuses), income, fees, receivables, receipts, revenues, deposits (including, without limitation, security, utility and other deposits), accounts, cash, issues, profits, charges for services rendered, and other payment and consideration of whatever form or nature received by or paid to or for the account of or benefit of Mortgagor or its agents or employees from any and all sources arising from or attributable to the Premises and the Improvements (hereinafter collectively referred to as the "Rents"), together with all proceeds from the sale or other disposition of the Leases and the right to receive and apply the Rents to the payment of the Debt;

(e)        all proceeds of and any unearned premiums on any insurance policies covering the Mortgaged Property, including, without limitation, the right to receive and apply the proceeds of any insurance, judgments, or settlements made in lieu thereof, for damage to the Mortgaged Property;

4

(f)    all accounts, escrows, documents, instruments, chattel paper, claims, deposits and general intangibles, as the foregoing terms are defined in the Uniform Commercial Code, and all franchises, trade names, trademarks, symbols, service marks, books, records, plans, specifications, designs, drawings, permits, consents, licenses, management agreements, contract rights (including, without limitation, any contract with any architect or engineer or with any other provider of goods or services for or in connection with any construction, repair, or other work upon the Mortgaged Property), approvals, actions, refunds of real estate taxes and assessments (and any other governmental impositions related to the Mortgaged Property), and causes of action that now or hereafter relate to, are derived from or are used in connection with the Mortgaged Property, or the use, operation, maintenance, occupancy or enjoyment thereof or the conduct of any business or activities thereon (hereinafter collectively referred to as the **"Intangibles"**); and

(g)    all proceeds, products, offspring, rents and profits from any of the foregoing, including, without limitation, those from sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.

**TO HAVE AND TO HOLD** the above granted and described Mortgaged Property unto and to the use and benefit of Mortgagee and its successors and assigns, forever;

**PROVIDED, HOWEVER,** these presents are upon the express condition that, if Mortgagor shall well and truly pay to Mortgagee the Debt at the time and in the manner provided in the Note and this Mortgage and shall well and truly abide by and comply with each and every covenant and condition set forth herein, in the Note and in the other Loan Documents (hereinafter defined) in a timely manner, these presents and the estate hereby granted shall cease, terminate and be void;

AND Mortgagor represents and warrants to and covenants and agrees with Mortgagee as follows:

### GENERAL PROVISIONS

1.    **Payment of Debt and Incorporation of Covenants, Conditions and Agreements.** Mortgagor shall pay all monthly installments of interest and principal as provided for in the Note and shall repay the Debt on or before the Maturity Date, as such term is defined in the Note (the **"Maturity Date"**) at the time and in the manner provided in the Note and in this Mortgage. All the covenants, conditions and agreements contained in (a) the Note and (b) all and any of the documents including, without limitation, the Note and this Mortgage now or hereafter executed by Mortgagor and/or others and by or in favor of Mortgagee, which evidences, secures or guarantees all or any portion of the payments due under the Note or otherwise is executed and/or delivered in connection with the Note and this Mortgage, guarantees and agreements (the **"Loan Documents"**) are hereby made a part of this Mortgage to the same extent and with the same force as if fully set forth herein. The Note is evidence of that certain loan made to the Mortgagor by the Mortgagee (the **"Loan"**).

2.    **Warranty of Title.** Mortgagor warrants that Mortgagor has good, marketable and insurable title to the Mortgaged Property and has the full power, authority and right to execute, deliver and perform its obligations under this Mortgage and to encumber, mortgage, give, grant, bargain, sell, alienate, enfeoff, convey, confirm, pledge, assign and

hypothecate the same and that Mortgagor possesses an unencumbered fee estate in the Premises and the Improvements and that it owns the Mortgaged Property free and clear of all liens, encumbrances and charges whatsoever except for those exceptions shown in the title insurance policy insuring the lien of this Mortgage and that this Mortgage is and will remain a valid and enforceable first lien on and security interest in the Mortgaged Property, subject only to said exceptions. Mortgagor shall forever warrant, defend and preserve such title and the validity and priority of the lien of this Mortgage and shall forever warrant and defend the same to Mortgagee against the claims of all persons whomsoever.

3.      **Insurance.**

(a)      Except as provided hereunder, Mortgagor, at its sole cost and expense, for the mutual benefit of Mortgagor and Mortgagee, shall obtain and maintain during the entire term of this Mortgage (the "**Term**") policies of insurance against loss or damage by fire, lightning, wind and such other perils as are included in a standard "all risk" or "special causes of loss" form, and against loss or damage by all other risks and hazards covered by a standard extended coverage insurance policy including, without limitation, riot and civil commotion, vandalism, malicious mischief, burglary and theft. Such insurance shall be in an amount equal to the greatest of (i) the then full replacement cost of the Improvements and Equipment, without deduction for physical depreciation, (ii) the outstanding principal balance of the Loan, and (iii) such amount that the insurer would not deem Mortgagor a coinsurer under said policies. The policies of insurance carried in accordance with this paragraph shall be paid annually in advance and shall contain a "Replacement Cost Endorsement" with a waiver of depreciation and an "Agreed Amount Endorsement". The policies shall have a deductible no greater than $10,000.00 unless agreed to by Mortgagee in writing.

(b)      Mortgagor, at its sole cost and expense, for the mutual benefit of Mortgagor and Mortgagee, shall also obtain and maintain during the Term the following policies of insurance:

(i)      Flood insurance if any part of the Mortgaged Property is located in an area identified by the Federal Emergency Management Agency as an area having special flood hazards and in which flood insurance has been made available under the National Flood Insurance Program in an amount at least equal to the outstanding principal amount of the Loan or the maximum limit of coverage available with respect to the Improvements and Equipment under said Program, whichever is less.

(ii)      Comprehensive General Liability or Commercial General Liability insurance, including a broad form comprehensive general liability endorsement and coverage for broad form property damage, contractual damages, personal injuries (including death resulting therefrom), containing minimum limits per occurrence of $1,000,000.00 and $2,000,000.00 in the aggregate for any policy year.

(iii)      Worker's compensation insurance with respect to any employees of Mortgagor, as required by any governmental authority or legal requirement.

(iv)     During any period of repair or restoration, builder's "all risk" insurance in an amount equal to not less than the full insurable value of the Mortgaged Property against such risks (including, without limitation, fire and extended coverage and collapse of the Improvements to agreed limits) as Mortgagee may request, in form and substance acceptable to Mortgagee or deemed sufficient by Mortgagee in order to protect its interests.

(v)     Such other insurance as may from time to time be reasonably required by Mortgagee in order to protect its interests.

(c)     All policies of insurance (the **"Policies"**) required pursuant to this paragraph: (i) shall be issued by companies approved by Mortgagee and licensed to do business in the state where the Mortgaged Property is located, with a claims paying ability rating of "BBB" or better by Standard & Poor's Ratings Services, a division of McGraw-Hill Companies, Inc.  and a rating of "A:VII" or better in the current Best's Insurance Reports; (ii) shall name Mortgagee and its successors and/or assigns as their interest may appear as the mortgagee; (iii) shall contain a Non-Contributory Standard Mortgagee Clause and a Lender's Loss Payable Endorsement, or their equivalents, naming Mortgagee as the person to which all payments made by such insurance company shall be paid; (iv) shall contain a waiver of subrogation against Mortgagee; (v) shall be maintained throughout the Term without cost to Mortgagee; (vi) shall be assigned and the originals or certified copies delivered to Mortgagee (including certified copies of the Policies in effect on the date hereof within thirty (30) days after the closing of the Loan); (vii) shall contain such provisions as Mortgagee deems reasonably necessary or desirable to protect its interest including, without limitation, endorsements providing that neither Mortgagor, Mortgagee nor any other party shall be a co-insurer under said Policies and that Mortgagee shall receive at least thirty (30) days prior written notice of any modification, reduction or cancellation; and (viii) shall be satisfactory in form and substance to Mortgagee and shall be approved by Mortgagee in its reasonable discretion as to amounts, form, risk coverage, deductibles, loss payees and insureds.  Mortgagor shall pay the premiums for such Policies (the **"Insurance Premiums"**) as the same become due and payable and shall furnish to Mortgagee evidence of the renewal of each of the Policies with receipts for the payment of the Insurance Premiums or other evidence of such payment reasonably satisfactory to Mortgagee (provided, however, that Mortgagor is not required to furnish such evidence of payment to Mortgagee in the event that such Insurance Premiums have been paid by Mortgagee pursuant to Paragraph 5 hereof).  If Mortgagor does not furnish such evidence and receipts at least thirty (30) days prior to the expiration of any expiring Policy, then Mortgagee may procure, but shall not be obligated to procure, such insurance and pay the Insurance Premiums therefor, and Mortgagor agrees to reimburse Mortgagee for the cost of such Insurance Premiums promptly on demand.  Within thirty (30) days after request by Mortgagee, Mortgagor shall obtain such increases in the amounts of coverage required hereunder as may be reasonably requested by Mortgagee, taking into consideration changes in the value of money over time, changes in liability laws, changes in prudent customs and practices, and the like.

(d)     If the Mortgaged Property shall be damaged or destroyed, in whole or in part, by fire or other casualty (an **"Insured Casualty"**), Mortgagor shall give prompt notice thereof to Mortgagee.  Following the occurrence of an Insured Casualty, Mortgagor, regardless of whether insurance proceeds are available, shall promptly proceed to restore, repair, replace or rebuild the same to be of at least equal value and of substantially the same character as prior to

7

such damage or destruction, all to be effected in accordance with applicable law. The expenses incurred by Mortgagee in the adjustment and collection of insurance proceeds shall become part of the Debt and be secured hereby and shall be reimbursed by Mortgagor to Mortgagee upon demand.

(e)        In case of loss or damages covered by any of the Policies, the following provisions shall apply:

(i)        In the event of an Insured Casualty that does not exceed ten percent (10%) of the original principal amount of the Note, Mortgagor may settle and adjust any claim without the consent of Mortgagee and agree with the insurance company or companies on the amount to be paid upon the loss; provided that such adjustment is carried out in a competent and timely manner. In such case, Mortgagor is hereby authorized to collect and receipt for any such insurance proceeds.

(ii)        In the event an Insured Casualty shall exceed ten percent (10%) of the original principal amount of the Note, then and in that event, Mortgagee may settle and adjust any claim without the consent of Mortgagor and agree with the insurance company or companies on the amount to be paid on the loss and the proceeds of any such policy shall be due and payable solely to Mortgagee and held in escrow by Mortgagee in accordance with the terms of this Mortgage.

(iii)        In the event of an Insured Casualty where the loss is in an aggregate amount less than forty percent (40%) of the original principal balance of the Note, and if, in the reasonable judgment of Mortgagee, the Mortgaged Property can be restored within six (6) months and prior to maturity of the Note to an economic unit not less valuable (including an assessment of the impact of the termination of any Leases due to such Insured Casualty) and not less useful than the same was prior to the Insured Casualty, and after such restoration will adequately secure the outstanding balance of the Debt, then, if no Event of Default (as hereinafter defined) shall have occurred and be then continuing, the proceeds of insurance (after reimbursement of any expenses incurred by Mortgagee) shall be applied to reimburse Mortgagor for the cost of restoring, repairing, replacing or rebuilding the Mortgaged Property or part thereof subject to the Insured Casualty, in the manner set forth below. Mortgagor hereby covenants and agrees to commence and diligently to prosecute such restoring, repairing, replacing or rebuilding; provided always, that Mortgagor shall pay all costs (and if required by Mortgagee, Mortgagor shall deposit the total thereof with Mortgagee in advance) of such restoring, repairing, replacing or rebuilding in excess of the net proceeds of insurance made available pursuant to the terms hereof.

(iv)        Except as provided above, the proceeds of insurance collected upon any Insured Casualty shall, at the option of Mortgagee in its sole discretion, be applied to the payment of the Debt or applied to reimburse Mortgagor for the cost of restoring, repairing, replacing or rebuilding the Mortgaged Property or part thereof subject to the Insured Casualty, in the manner set forth below. Any such application to the Debt shall be without any Prepayment Premium (as such term is defined in the Note), except that if an Event of Default has occurred and is continuing then the Mortgagor shall pay to Mortgagee an additional amount equal to the Prepayment Premium (as such term is defined in the Note), if any. Any such

8

application to the Debt shall (A) be applied to those payments of principal and interest last due under the Note but shall not postpone any payments otherwise required pursuant to the Note other than such last due payments and (B) cause the Note to be re-amortized in accordance with its terms and conditions.

(v)    In the event Mortgagor is entitled to reimbursement out of insurance proceeds held by Mortgagee, such proceeds shall be disbursed from time to time upon Mortgagee being furnished with (1) evidence satisfactory to it of the estimated cost of completion of the restoration, repair, replacement and rebuilding, (2) funds or, at Mortgagee's option, assurances satisfactory to Mortgagee that such funds are available, sufficient in addition to the proceeds of insurance to complete the proposed restoration, repair, replacement and rebuilding, and (3) such architect's certificates, waivers of lien, contractor's sworn statements, title insurance endorsements, bonds, plats of survey and such other evidences of cost, payment and performance as Mortgagee may reasonably require and approve. Mortgagee may, in any event, require that all plans and specifications for such restoration, repair, replacement and rebuilding be submitted to and approved by Mortgagee in its reasonable discretion prior to commencement of work. No payment made prior to the final completion of the restoration, repair, replacement and rebuilding shall exceed ninety percent (90%) of the value of the work performed from time to time; funds other than proceeds of insurance shall be disbursed prior to disbursement of such proceeds; and at all times, the undisbursed balance of such proceeds remaining in the hands of Mortgagee, together with funds deposited for that purpose or irrevocably committed to the satisfaction of Mortgagee by or on behalf of Mortgagor for that purpose, shall be at least sufficient in the reasonable judgment of Mortgagee to pay for the cost of completion of the restoration, repair, replacement or rebuilding, free and clear of all liens or claims for lien. Any surplus which may remain out of insurance proceeds held by Mortgagee after payment of such costs of restoration, repair, replacement or rebuilding shall be paid to any party entitled thereto.

(f)    In the event of any conflict, inconsistency or ambiguity between the provisions of this Paragraph 3 and the provisions of subsection 4 of Section 254 of the Real Property Law of New York covering the insurance of buildings against loss by fire, the provisions of Paragraph 3 hereof shall control.

4.    **Payment of Taxes, Etc.**    Mortgagor shall pay taxes, assessments, water rates and sewer rents, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (the "**Taxes**") and all ground rents, maintenance charges, other impositions, and other charges, including, without limitation, vault charges and license fees for the use of vaults, chutes and similar areas adjoining the Premises, now or hereafter levied or assessed or imposed against the Mortgaged Property or any part thereof (the "**Other Charges**") as the same become due and payable. Mortgagor will deliver to Mortgagee receipts for payment or other evidence satisfactory to Mortgagee that the Taxes and Other Charges have been so paid or are not then delinquent no later than thirty (30) days prior to the date on which the Taxes and/or Other Charges would otherwise be delinquent if not paid. Mortgagor shall not suffer and shall promptly cause to be paid and discharged any lien or charge whatsoever which may be or become a lien or charge against the Mortgaged Property, and shall promptly pay for all utility services provided to the Mortgaged Property. Mortgagor shall furnish to Mortgagee receipts for the payment of the Taxes and the Other Charges prior to the

9

date the same shall become delinquent (provided, however, that Mortgagor is not required to furnish such receipts for payment of Taxes in the event that such Taxes have been paid by Mortgagee pursuant to Paragraph 5 hereof).

        **5.**           **Tax and Insurance Escrow Fund.**  Mortgagor shall pay to Mortgagee on the first (1st) day of each calendar month (a) one-twelfth of the Taxes that Mortgagee estimates will be payable during the next ensuing twelve (12) months in order to accumulate with Mortgagee sufficient funds to pay all such Taxes at least thirty (30) days prior to their respective due dates, and (b) one-twelfth of the Insurance Premiums that Mortgagee estimates will be payable for the renewal of the coverage afforded by the Policies upon the expiration thereof in order to accumulate with Mortgagee sufficient funds to pay all such Insurance Premiums at least thirty (30) days prior to the expiration of the Policies (said amounts in (a) and (b) above hereinafter called the **"Tax and Insurance Escrow Fund"**).  The Tax and Insurance Escrow Fund and the payments of interest or principal or both, payable pursuant to the Note, shall be added together and shall be paid as an aggregate sum by Mortgagor to Mortgagee. Mortgagor hereby pledges to Mortgagee and grants to Mortgagee a security interest in any and all monies now or hereafter deposited in the Tax and Insurance Escrow Fund as additional security for the payment of the Debt.  Mortgagee will apply the Tax and Insurance Escrow Fund in a timely fashion to payments of Taxes and Insurance Premiums required to be made by Mortgagor pursuant to Paragraphs 3 and 4 hereof.  In making any payment relating to the Tax and Insurance Escrow Fund, Mortgagee may do so according to any bill, statement or estimate procured from the appropriate public office (with respect to Taxes) or Mortgagor's insurer or agent (with respect to Insurance Premiums), without inquiry into the accuracy of such bill, statement or estimate or into the validity of any tax, assessment, sale, forfeiture, tax lien or title or claim thereof.  If the amount of the Tax and Insurance Escrow Fund shall exceed the amounts due for Taxes and Insurance Premiums pursuant to Paragraphs 3 and 4 hereof, Mortgagee shall, in its sole discretion, return any excess to Mortgagor or credit such excess against future payments to be made to the Tax and Insurance Escrow Fund.  In allocating such excess, Mortgagee may deal with the person shown on the records of Mortgagee to be the owner of the Mortgaged Property.  If at any time Mortgagee determines that the Tax and Insurance Escrow Fund is not or will not be sufficient to pay the items set forth in (a) and (b) above, Mortgagee shall notify Mortgagor of such determination and Mortgagor shall increase its monthly payments to Mortgagee by the amount that Mortgagee estimates is sufficient to make up the deficiency at least thirty (30) days prior to delinquency of the Taxes and/or expiration of the Policies, as the case may be.  Upon the occurrence of an Event of Default, Mortgagee may apply any sums then present in the Tax and Insurance Escrow Fund to the payment of the Debt in any order in its sole discretion.  Until expended or applied as above provided, any amounts in the Tax and Insurance Escrow Fund shall constitute additional security for the Debt.  The Tax and Insurance Escrow Fund shall not constitute a trust fund and may be commingled with other monies held by Mortgagee.  The Tax and Insurance Escrow Fund may at Mortgagee's sole option be held in an interest bearing account in Mortgagee's name at a financial institution selected by Mortgagee in its sole discretion.  All earnings or interest on the Tax and Insurance Escrow Fund, if any, shall be and become part of such Tax and Insurance Escrow Fund and shall be disbursed as provided in this Paragraph 5.  If Mortgagee so elects at any time, Mortgagor shall provide, at Mortgagor's expense, a tax service contract for the Term issued by a tax reporting agency acceptable to Mortgagee.  If Mortgagee does not so elect, Mortgagor shall reimburse Mortgagee for the cost of making annual tax searches throughout the Term.

6.       **Condemnation.**       Mortgagor shall promptly give Mortgagee written notice of the actual or threatened commencement of any condemnation or eminent domain proceeding (a **"Condemnation"**) and shall deliver to Mortgagee copies of any and all papers served in connection with such Condemnation.       Following the occurrence of a Condemnation, Mortgagor, regardless of whether an Award (hereinafter defined) is available, shall promptly proceed to restore, repair, replace or rebuild the same to the extent practicable to be of at least equal value and of substantially the same character as prior to such Condemnation, all to be effected in accordance with applicable law.

(a)       Mortgagee is hereby irrevocably appointed as Mortgagor's attorney-in-fact, coupled with an interest, with exclusive power to collect, receive and retain any award or payment (**"Award"**) for any taking accomplished through a Condemnation (a **"Taking"**) and to make any compromise or settlement in connection with such Condemnation, subject to the provisions of this Mortgage. Notwithstanding any Taking by any public or quasi-public authority (including, without limitation, any transfer made in lieu of or in anticipation of such a Taking), Mortgagor shall continue to pay the Debt at the time and in the manner provided for in the Note, in this Mortgage and the other Loan Documents and the Debt shall not be reduced unless and until any Award shall have been actually received and applied by Mortgagee to expenses of collecting the Award and to discharge of the Debt. Mortgagee shall not be limited to the interest paid on the Award by the condemning authority but shall be entitled to receive out of the Award interest at the rate or rates provided in the Note. Mortgagor shall cause any Award that is payable to Mortgagor to be paid directly to Mortgagee.

(b)       In the event of any Condemnation where the Award is in an aggregate amount less than twenty-five percent (25%) of the original principal balance of the Note, and if, in the reasonable judgment of Mortgagee, the Mortgaged Property can be restored within six (6) months and prior to maturity of the Note to an economic unit not less valuable (including an assessment of the impact of the termination of any Leases due to such Condemnation) and not less useful than the same was prior to the Condemnation, and after such restoration will adequately secure the outstanding balance of the Debt, then, if no Event of Default shall have occurred and be then continuing, the proceeds of the Award (after reimbursement of any expenses incurred by Mortgagee) shall be applied to reimburse Mortgagor for the cost of restoring, repairing, replacing or rebuilding the Mortgaged Property or part thereof subject to Condemnation, in the manner set forth below. Mortgagor hereby covenants and agrees to commence and diligently to prosecute such restoring, repairing, replacing or rebuilding; provided always, that Mortgagor shall pay all costs (and if required by Mortgagee, Mortgagor shall deposit the total thereof with Mortgagee in advance) of such restoring, repairing, replacing or rebuilding in excess of the Award to be made available pursuant to the terms hereof.

(c)       Except as provided above, the Award collected upon any Condemnation shall, at the option of Mortgagee in its sole discretion, be applied to the payment of the Debt or applied to reimburse Mortgagor for the cost of restoring, repairing, replacing or rebuilding the Mortgaged Property or part thereof subject to the Condemnation, in the manner set forth below. Any such application to the Debt shall be without any Prepayment Premium except that if an Event of Default has occurred and is continuing then the Mortgagor shall pay to Mortgagee an additional amount equal to the Prepayment Premium, if any. Any such application

11

to the Debt shall (i) be applied to those payments of principal and interest last due under the Note but shall not postpone or reduce any payments otherwise required pursuant to the Note other than such last due payments and (ii) cause the Note to be re-amortized in accordance with its terms and conditions. If the Mortgaged Property is sold, through foreclosure or otherwise, prior to the receipt by Mortgagee of such Award, Mortgagee shall have the right, whether or not a deficiency judgment on the Note shall be recoverable or shall have been sought, recovered or denied, to receive all or a portion of said Award sufficient to pay the Debt.

(d)     In the event Mortgagor is entitled to reimbursement out of the Award received by Mortgagee, such proceeds shall be disbursed from time to time upon Mortgagee being furnished with (1) evidence reasonably satisfactory to it of the estimated cost of completion of the restoration, repair, replacement and rebuilding resulting from such condemnation, (2) finds or, at Mortgagee's option, receives assurances reasonably satisfactory to Mortgagee that such funds are available, sufficient in addition to the proceeds of the Award to complete the proposed restoration, repair, replacement and rebuilding, and (3) such architect's certificates, waivers of lien, contractor's sworn statements, title insurance endorsements, bonds, plats of survey and such other evidences of costs, payment and performance as Mortgagee may reasonably require and approve; and Mortgagee may, in any event, require that all plans and specifications for such restoration, repair, replacement and rebuilding be submitted to and approved by Mortgagee prior to commencement of work. No payment made prior to the final completion of the restoration, repair, replacement and rebuilding shall exceed ninety percent (90%) of the value of the work performed from time to time; funds other than proceeds of the Award shall be disbursed prior to disbursement of such proceeds; and at all times, the undisbursed balance of such proceeds remaining in hands of Mortgagee, together with funds deposited for that purpose or irrevocably committed to the satisfaction of Mortgagee by or on behalf of Mortgagor for that purpose, shall be at least sufficient in the reasonable judgment of Mortgagee to pay for the costs of completion of the restoration, repair, replacement or rebuilding, free and clear of all liens or claims for lien. Any surplus which may remain out of the Award received by Mortgagee after payment of such costs of restoration, repair, replacement or rebuilding shall, in the sole and absolute discretion of Mortgagee, be retained by Mortgagee and applied to payment of the Debt provided that such application to the Debt shall be without any Prepayment Premium as long as no Event of Default has occurred and is continuing.

7.          **Leases and Rents.**

(a)     Mortgagor does hereby absolutely and unconditionally assign to Mortgagee, all of Mortgagor's right, title and interest in all current and future Leases and Rents, it being intended by Mortgagor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Such assignment to Mortgagee shall not be construed to bind Mortgagee to the performance of any of the covenants, conditions or provisions contained in any such Lease or otherwise impose any obligation upon Mortgagee. Mortgagor agrees to execute and deliver to Mortgagee such additional instruments, in form and substance satisfactory to Mortgagee, as may hereafter be requested by Mortgagee to further evidence and confirm such assignment. Nevertheless, subject to the terms of this paragraph, Mortgagee grants to Mortgagor a revocable license to operate and manage the Mortgaged Property and to collect the Rents. Mortgagor shall hold the Rents, or a portion thereof, sufficient to discharge all current sums due on the Debt, in trust for the benefit of Mortgagee for use in the

12

payment of such sums. Upon an Event of Default, without the need for notice or demand, the license granted to Mortgagor herein shall automatically be revoked, and Mortgagee shall immediately be entitled to possession of all Rents, whether or not Mortgagee enters upon or takes control of the Mortgaged Property. Mortgagee is hereby granted and assigned by Mortgagor the right, at its option, upon revocation of the license granted herein, to enter upon the Mortgaged Property in person, by agent or by court-appointed receiver to collect the Rents. Any Rents collected after the revocation of the license may be applied toward payment of the Debt in such priority and proportions as Mortgagee in its sole discretion shall deem proper.

(b)    All residential leases shall be written on the standard form of residential lease which has been approved by Mortgagee and all commercial leases shall be written on the standard form of commercial lease which has been approved by Mortgagee. No material changes may be made to the Mortgagee-approved standard residential or commercial lease except for customary alterations made in the ordinary course of business. All Leases shall provide that they are subordinate to this Mortgage and that the tenant agrees to attorn to Mortgagee. All renewals of residential leases and all proposed residential leases shall provide for rental rates comparable to existing local market rates and shall be arms length transactions. None of the commercial leases shall contain any non-disturbance or similar recognition agreement, any requirement that the Mortgagor rebuild the Mortgaged Property in connection with a casualty or condemnation of any portion of the Mortgaged Property, or any other similar provisions which adversely affect the Mortgaged Property or which might adversely affect the rights of any holder of the Loan without the prior written consent of Mortgagee. Upon request, Mortgagor shall furnish Mortgagee with executed copies of all residential and commercial leases.

(c)    Mortgagor (i) shall observe and perform all the obligations imposed upon the lessor under the Leases and shall not do or permit to be done anything to impair the value of the Leases as security for the Debt; (ii) shall promptly send copies to Mortgagee of all notices of default which can lead to an offset of Rents or termination of the applicable Lease that Mortgagor shall send or receive thereunder; (iii) shall enforce all the terms, covenants and conditions contained in the Leases upon the part of the lessee thereunder to be observed or performed, short of termination thereof; (iv) shall not collect any of the Rents more than one (1) month in advance; (v) shall not execute any other assignment of the lessor's interest in the Leases or the Rents; (vi) shall use its best efforts to deliver to Mortgagee, upon request, tenant estoppel certificates from each commercial tenant at the Mortgaged Property in form and substance reasonably satisfactory to Mortgagee, provided that Mortgagor shall not be required to deliver such certificates more frequently than four (4) times in any calendar year; and (vii) shall execute and deliver at the request of Mortgagee all such further assurances, confirmations and assignments in connection with the Mortgaged Property as Mortgagee shall from time to time require. Except to the extent Mortgagor is acting in the ordinary course of business as a prudent operator of property similar to the Mortgaged Property, Mortgagor (A) shall not, alter, modify or change the terms of the Leases in any material respect without the prior written consent of Mortgagee, such consent not to be unreasonably withheld or delayed; (B) shall not convey or transfer or suffer or permit a conveyance or transfer of the Mortgaged Property or of any interest therein so as to effect a merger of the estates and rights of, or a termination or diminution of the obligations of, tenants under the Leases; (C) shall not consent to any assignment of or subletting under the Leases not in accordance with their terms, without the prior written consent of

13

Mortgagee; and (D) shall not cancel or terminate the Leases or accept a surrender thereof, except if a tenant is in default thereunder; provided, however, that any Lease may be cancelled if at the time of the cancellation thereof a new Lease is entered into on substantially the same terms or more favorable terms as the cancelled Lease.

(d)    Mortgagor may enter into proposed new commercial leases and proposed renewals or extensions of existing commercial leases without the prior written consent of Mortgagee if such proposed commercial leases or extension: (i) is not for greater than or equal to ten percent (10%) of the gross leaseable area of the Mortgaged Property, or greater than or equal to ten percent (10%) of the total gross rental revenues of the Mortgaged Property; (ii) shall have an initial term of not less than three (3) years or greater than ten (10) years; (iii) shall provide for rental rates comparable to existing local market rates and shall be an armslength transaction; (iv) shall not contain any options for renewal or expansion by the tenant thereunder at rental rates which are either below comparable market levels or less than the rental rates paid by the tenant during the initial lease term; (v) shall be to a tenant which is experienced, creditworthy and reputable; and (vi) shall comply with the requirements of subparagraph (b), above. Mortgagor may enter into a proposed lease which does not satisfy all of the conditions set forth in clauses (i) through (vi) immediately above only with the prior written consent of Mortgagee, such consent not to be unreasonably withheld or delayed. Mortgagor expressly understands that any and all new or proposed commercial leases are included in the definition of "Lease" or "Leases" as such terms may be used throughout this Mortgage and the other Loan Documents.

(e)    All security deposits of tenants, whether held in cash or any other form, shall not be commingled with any other funds of Mortgagor and, if cash, shall be deposited by Mortgagor at such commercial or savings bank or banks as may be reasonably satisfactory to Mortgagee. Any bond or other instrument which Mortgagor is permitted to hold in lieu of cash security deposits under any applicable legal requirements shall be maintained in full force and effect in the full amount of such deposits unless replaced by cash deposits as hereinabove described, shall be issued by an institution reasonably satisfactory to Mortgagee, shall, if permitted pursuant to any legal requirements, name Mortgagee as payee or mortgagee thereunder (or at Mortgagee's option, be fully assignable to Mortgagee) and shall, in all respects, comply with any applicable legal requirements and otherwise be reasonably satisfactory to Mortgagee. Mortgagor shall, upon request, provide Mortgagee with evidence reasonably satisfactory to Mortgagee of Mortgagor's compliance with the foregoing. Following the occurrence and during the continuance of any Event of Default, Mortgagor shall, upon Mortgagee's request, if permitted by any applicable legal requirements, turn over to Mortgagee the security deposits (and any interest theretofore earned thereon) with respect to all or any portion of the Mortgaged Property, to be held by Mortgagee subject to the terms of the Leases.

8.    **Representations and Covenants Concerning the Loan.** Mortgagor represents, warrants and covenants as follows:

(a)    The Note, this Mortgage and the other Loan Documents are not subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury, nor would the operation of any of the terms of the Note, this Mortgage and the other Loan Documents, or the exercise of any right thereunder, render this Mortgage unenforceable, in

14

whole or in part, or subject to any right of rescission, set-off, counterclaim or defense, including the defense of usury.

(b)     All certifications, permits, licenses and approvals, including, without limitation, certificates of completion and occupancy permits required for the legal use, occupancy and operation of the Mortgaged Property have been obtained and are in full force and effect. The Mortgaged Property is free of material damage and is in good repair, and there is no proceeding pending for the total or partial condemnation of, or affecting, the Mortgaged Property. The Mortgagor shall comply with all of the recommendations concerning the maintenance and repair of the Mortgaged Property which are contained in the inspection and engineering report which was delivered to Mortgagee in connection with the origination of the Loan.

(c)     All of the Improvements which were included in determining the appraised value of the Mortgaged Property lie wholly within the boundaries and building restriction lines of the Mortgaged Property, and no improvements on adjoining properties encroach upon the Mortgaged Property, and no easements or other encumbrances upon the Premises encroach upon any of the Improvements, so as to affect the value or marketability of the Mortgaged Property except those which are insured against by title insurance. All of the Improvements comply with all material requirements of any applicable zoning and subdivision laws and ordinances.

(d)     The Mortgaged Property is not subject to any Leases other than the Leases described in the rent roll delivered to Mortgagee in connection with this Mortgage. No person has any possessory interest in the Mortgaged Property or right to occupy the same except under and pursuant to the provisions of the Leases. The current Leases are in full force and effect and there are no defaults thereunder by either party and there are no conditions that, with the passage of time or the giving of notice, or both, would constitute defaults thereunder.

(e)     The survey of the Mortgaged Property delivered to Mortgagee in connection with this Mortgage, has been performed by a duly licensed surveyor or registered professional engineer in the jurisdiction in which the Mortgaged Property is situated, is certified to the Mortgagee, its successors and assigns, and the title insurance company, and is in accordance with the most current minimum standards for title surveys as determined by the American Land Title Association, with the signature and seal of a licensed engineer or surveyor affixed thereto, and does not fail to reflect any material matter affecting the Mortgaged Property or the title thereto.

(f)     The Mortgaged Property is and shall at all times remain in compliance with all statutes, ordinances, regulations and other governmental or quasi-governmental requirements and private covenants now or hereafter relating to the ownership, construction, use or operation of the Mortgaged Property.

(g)     Mortgagor operates the Mortgaged Property and has not entered into any agreement with any third party relating to the operation and management of the Mortgaged Property, and no third party is entitled to any management fee or any portion of the Rents.

15

9.    **Trust Fund.**  Pursuant to Section 13 of the lien law of New York, Mortgagor shall receive the advances secured hereby and shall hold the right to receive such advances as a trust fund to be applied first for the purpose of paying the cost of any improvement and shall apply such advances first to the payment of the cost of any such improvement on the Mortgaged Property before using any part of the total of the same for any other purpose.

10.    **Maintenance of Mortgaged Property.**    Mortgagor shall cause the Mortgaged Property to be maintained in a good and safe condition and repair.  The Improvements and the Equipment shall not be removed, demolished or materially altered (except for normal replacement of the Equipment) without the consent of Mortgagee.  Mortgagor shall promptly comply with all laws, orders and ordinances affecting the Mortgaged Property, or the use thereof subject to the applicable provisions of this Mortgage.  Mortgagor shall promptly repair, replace or rebuild any part of the Mortgaged Property that is destroyed by any casualty, or becomes damaged, worn or dilapidated or that is affected by any proceeding of the character referred to in Paragraph 6 hereof and shall complete and pay for any structure at any time in the process of construction or repair on the Premises.  Mortgagor shall not initiate, join in, acquiesce in, or consent to any change in any private restrictive covenant, zoning law or other public or private restriction, limiting or defining the uses which may be made of the Mortgaged Property or any part thereof.  If under applicable zoning provisions the use of all or any portion of the Mortgaged Property is or shall become a nonconforming use, Mortgagor will not cause or permit such nonconforming use to be discontinued or abandoned without the express written consent of Mortgagee.  Mortgagor shall not (i) change the use of the Mortgaged Property, (ii) permit or suffer to occur any waste on or to the Mortgaged Property or to any portion thereof or (iii) take any steps whatsoever to convert the Mortgaged Property, or any portion thereof, to a condominium or cooperative form of management.  Mortgagor will not install or permit to be installed on the Premises any underground storage tank.

11.    **Transfer or Encumbrance of the Mortgaged Property.**

(a)    Mortgagor acknowledges that Mortgagee has examined and relied on the creditworthiness and experience of Mortgagor in owning and operating properties such as the Mortgaged Property in agreeing to make the Loan, and that Mortgagee will continue to rely on Mortgagor's ownership of the Mortgaged Property as a means of maintaining the value of the Mortgaged Property as security for repayment of the Debt.  Mortgagor acknowledges that Mortgagee has a valid interest in maintaining the value of the Mortgaged Property so as to ensure that, should Mortgagor default in the repayment of the Debt, Mortgagee can recover the Debt by a sale of the Mortgaged Property.  Mortgagor shall not, without the prior written consent of Mortgagee, sell, convey, alienate, mortgage, encumber, pledge or otherwise transfer the Mortgaged Property or any part thereof, or permit the Mortgaged Property or any part thereof to be sold, conveyed, alienated, mortgaged, encumbered, pledged or otherwise transferred.

(b)    A sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer within the meaning of this Paragraph 11 shall be deemed to include (i) an installment sales agreement wherein Mortgagor agrees to sell the Mortgaged Property or any part thereof for a price to be paid in installments; (ii) an agreement by Mortgagor leasing all or a substantial part of the Mortgaged Property for other than actual occupancy by a space tenant thereunder or a sale, assignment or other transfer of, or the grant of a security interest in, Mortgagor's right, title and interest in and to any Leases or any Rents; (iii) if Mortgagor, Guarantor, or any general partner of Mortgagor or Guarantor is a corporation, the voluntary or

16

involuntary sale, conveyance or transfer of such corporation's stock (or the stock of any corporation directly or indirectly controlling such corporation by operation of law or otherwise) or the creation or issuance of new stock in one or a series of transactions by which an aggregate of more than 10% of such corporation's stock shall be vested in a party or parties who are not now stockholders or any change in the control of such corporation; (iv) if Mortgagor, any Guarantor or any general partner of Mortgagor or any Guarantor is a limited or general partnership, joint venture or limited liability company, the change, removal, resignation or addition of a general partner, managing partner, limited partner, joint venturer or member or the transfer of the partnership interest of any general partner, managing partner or limited partner or the transfer of the interest of any joint venturer or member; and (v) any pledge, hypothecation, assignment, transfer or other encumbrance of any ownership interest in Mortgagor.

(c)     Mortgagee shall not be required to demonstrate any actual impairment of its security or any increased risk of default hereunder in order to declare the Debt immediately due and payable upon Mortgagor's sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property or any portion thereof without Mortgagee's consent. This provision shall apply to every sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property regardless of whether voluntary or not, or whether or not Mortgagee has consented to any previous sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property.

(d)     Mortgagee's consent to one sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property or any portion thereof shall not be deemed to be a waiver of Mortgagee's right to require such consent to any future occurrence of same.  Any sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer of the Mortgaged Property or any portion thereof made in contravention of this paragraph shall be null and void and of no force and effect.

(e)     Mortgagor agrees to bear and shall pay or reimburse Mortgagee on demand for all reasonable expenses (including, without limitation, reasonable attorneys' fees and disbursements, title search costs and title insurance endorsement premiums) incurred by Mortgagee in connection with the review, approval and documentation of any such sale, conveyance, alienation, mortgage, encumbrance, pledge or transfer.

12.        **Estoppel Certificates and No Default Affidavits.**

(a)     After request by Mortgagee, Mortgagor shall within ten (10) days furnish Mortgagee with a statement, duly acknowledged and certified, setting forth (i) the amount of the original principal amount of the Note, (ii) the unpaid principal amount of the Note, (iii) the rate of interest of the Note, (iv) the date installments of interest and/or principal were last paid, (v) any offsets or defenses to the payment of the Debt, if any, and (vi) that the Note, this Mortgage and the other Loan Documents are valid, legal and binding obligations and have not been modified or if modified, giving particulars of such modification.

(b)     After request by Mortgagee, Mortgagor shall within ten (10) days furnish Mortgagee with a certificate reaffirming all representations and warranties of Mortgagor set forth herein and in the other Loan Documents as of the date requested by Mortgagee or, to the extent of any changes to any such representations and warranties, so stating such changes.

13.     **Changes in Laws Regarding Taxation.**   If any law is enacted or adopted or amended after the date of this Mortgage which deducts the Debt from the value of the Mortgaged Property for the purpose of taxation or which imposes a tax, either directly or indirectly, on the Debt or Mortgagee's interest in the Mortgaged Property, Mortgagor will pay such tax, with interest and penalties thereon, if any.  In the event Mortgagee is advised by counsel chosen by it that the payment of such tax or interest and penalties by Mortgagor would be unlawful or taxable to Mortgagee or unenforceable or provide the basis for a defense of usury, then in any such event, Mortgagee shall have the option, by written notice of not less than one hundred twenty (120) days, to declare the Debt immediately due and payable, provided that Mortgagor shall not be required to pay any Prepayment Premium in connection herewith unless an Event of Default has occurred and is continuing.

14.     **Documentary Stamps.**   If at any time the United States of America, any State thereof or any subdivision of any such State shall require revenue or other stamps to be affixed to the Note or this Mortgage, or impose any other tax or charge on the same, Mortgagor will pay for the same, with interest and penalties thereon, if any.

15.     **Controlling Agreement.**   It is expressly stipulated and agreed to be the intent of Mortgagor, and Mortgagee at all times to comply with applicable state law or applicable United States federal law (to the extent that it permits Mortgagee to contract for, charge, take, reserve, or receive a greater amount of interest than under state law) and that this Paragraph 15 shall control every other covenant and agreement in this Mortgage and the other Loan Documents.  If the applicable law (state or federal) is ever judicially interpreted so as to render usurious any amount called for under the Note or under any of the other Loan Documents, or contracted for, charged, taken, reserved, or received with respect to the Debt, or if Mortgagee's exercise of the option to accelerate the maturity of the Note, or if any prepayment by Mortgagor results in Mortgagor having paid any interest in excess of that permitted by applicable law, then it is Mortgagor's and Mortgagee's express intent that all excess amounts theretofore collected by Mortgagee shall be credited on the principal balance of the Note and all other Debt, and the provisions of the Note and the other Loan Documents immediately be deemed reformed and the amounts thereafter collectible hereunder and thereunder reduced, without the necessity of the execution of any new documents, so as to comply with the applicable law, but so as to permit the recovery of the fullest amount otherwise called for hereunder or thereunder.  All sums paid or agreed to be paid to Mortgagee for the use, forbearance, or detention of the Debt shall, to the extent permitted by applicable law, be amortized, prorated, allocated, and spread throughout the full stated term of the Debt until payment in full so that the rate or amount of interest on account of the Debt does not exceed the maximum lawful rate from time to time in effect and applicable to the Debt for so long as the Debt is outstanding.  Notwithstanding anything to the contrary contained herein or in any of the other Loan Documents, it is not the intention of Mortgagee to accelerate the maturity of any interest that has not accrued at the time of such acceleration or to collect unearned interest at the time of such acceleration.

16.     **Financial Statements.**   The financial statements heretofore furnished to Mortgagee are, as of the dates specified therein, complete and correct and fairly present the financial condition of the Mortgagor and any other persons or entities that are the subject of such financial statements, and are prepared in accordance with generally accepted accounting principles.  Mortgagor does not have any liabilities for taxes, unusual forward or long-term commitments or unrealized or anticipated losses from any unfavorable commitments

18

that are known to Mortgagor and reasonably likely to have a materially adverse effect on the Mortgaged Property or the operation thereof, except as referred to or reflected in said financial statements.   Since the date of such financial statements, there has been no materially adverse change in the financial condition, operation or business of Mortgagor from that set forth in said financial statements.

17.   **Performance of Other Agreements.**   Mortgagor   shall observe and perform each and every term to be observed or performed by Mortgagor pursuant to the terms of any agreement or recorded instrument affecting or pertaining to the Mortgaged Property.

18.   **Further Acts, Etc.**   Mortgagor will, at the cost of Mortgagor, and without expense to Mortgagee, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assignments, notices of assignment, Uniform Commercial Code financing statements or continuation statements, transfers and assurances as Mortgagee shall, from time to time, require, for the better assuring, conveying, assigning, transferring, and confirming unto Mortgagee the property and rights hereby mortgaged, given, granted, bargained, sold, alienated, enfeoffed, conveyed, confirmed, pledged, assigned and hypothecated or intended now or hereafter so to be, or which Mortgagor may be or may hereafter become bound to convey or assign to Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage or for facilitating the sale of the Loan and the Loan Documents (if Mortgage elects to do so. )  Mortgagor, on demand, will execute and deliver and hereby authorizes Mortgagee to execute in the name of Mortgagor or without the signature of Mortgagor to the extent Mortgagee may lawfully do so, one or more financing statements, chattel mortgages or other instruments, to evidence more effectively the security interest of Mortgagee in the Mortgaged Property.  Upon foreclosure, the appointment of a receiver or any other relevant action, Mortgagor will, at the cost of Mortgagor and without expense to Mortgagee, cooperate fully and completely to effect the assignment or transfer of any license, permit, agreement or any other right necessary or useful to the operation of the Mortgaged Property.   Mortgagor grants to Mortgagee an irrevocable power of attorney coupled with an interest for the purpose of exercising and perfecting any and all rights and remedies available to Mortgagee at law and in equity, including, without limitation, such rights and remedies available to Mortgagee pursuant to this paragraph.

19.   **Recording of Mortgage, Etc.**   Mortgagor forthwith upon the execution and delivery of this Mortgage and thereafter, from time to time, will cause this Mortgage, and any security instrument creating a lien or security interest or evidencing the lien hereof upon the Mortgaged Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be required by any present or future law in order to publish notice of and fully to protect the lien or security interest hereof upon, and the interest of Mortgagee in, the Mortgaged Property.  Mortgagor will pay all filing, registration or recording fees, and all expenses incident to the preparation, execution and acknowledgment of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property and any instrument of further assurance, and all federal, state, county and municipal, taxes, duties, imposts, assessments and charges arising out of or in connection with the execution and delivery of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the Mortgaged Property or any instrument of further assurance, except where prohibited by law so to do.  Mortgagor shall hold harmless and

19

indemnify Mortgagee, its successors and assigns, against any liability incurred by reason of the imposition of any tax on the making and recording of this Mortgage.

        20.        **Reporting Requirements.**  Mortgagor agrees to give prompt notice to Mortgagee of the insolvency or bankruptcy filing of Mortgagor or the death, insolvency or bankruptcy filing of any Guarantor.

        21.        **Events of Default.**  The Debt shall become immediately due and payable at the option of Mortgagee upon the happening of any one or more of the following events of default (each an **"Event of Default"**):

        (a)      if any portion of the Debt is not paid when due;

        (b)      subject to Mortgagor's right to contest as provided herein, if any of the Taxes or Other Charges are not paid when the same are due and payable in accordance with Paragraph 4 and Paragraph 5 of this Mortgage;

        (c)      if the Policies are not kept in full force and effect or are not delivered to Mortgagee upon request and in accordance with the requirements contained in this Mortgage;

        (d)      if Mortgagor transfers or encumbers any portion of the Mortgaged Property without Mortgagee's prior written consent , it being expressly agreed and acknowledged by Mortgagor that subordinate financing is prohibited by this Mortgage;

        (e)      if any material representation or warranty of Mortgagor, or of any Guarantor, made herein or in any other Loan Document or in any certificate, report, financial statement or other instrument or document furnished to Mortgagee shall have been false or misleading in any material respect when made;

        (f)      if Mortgagor or any Guarantor shall make an assignment for the benefit of creditors or if Mortgagor shall generally not be paying its debts as they become due;

        (g)      if a receiver, liquidator or trustee of Mortgagor or of any Guarantor shall be appointed or if Mortgagor or any Guarantor shall be adjudicated a bankrupt or insolvent, or if any petition for bankruptcy, reorganization or arrangement pursuant to federal bankruptcy law, or any similar federal or state law, shall be filed by or against, consented to, or acquiesced in by, Mortgagor or any Guarantor or if any proceeding for the dissolution or liquidation of Mortgagor or of any Guarantor shall be instituted; however, if such appointment, adjudication, petition or proceeding was involuntary and not consented to by Mortgagor or such Guarantor, upon the same not being discharged, stayed or dismissed within sixty (60) days:

        (h)      if Mortgagor shall be in default under any other mortgage or security agreement covering any part of the Mortgaged Property whether it be superior or junior in lien to this Mortgage;

        (i)      subject to Mortgagor's rights set forth in Paragraph 3 of this Mortgage, if the Mortgaged Property becomes subject to any mechanic's, materialman's or other

lien in excess of $10,000.00 except a lien for local real estate taxes and assessments not then due and payable;

(j)      if Mortgagor fails to cure properly any (i) building department violations, or (ii) rent impairing violations affecting or which may be interpreted to affect the Mortgaged Property and which have or may have a negative adverse impact on Rents in the sole judgment of Mortgagee within thirty (30) days after Mortgagor first receives notice of any such violations;

(k)      except as permitted in this Mortgage, the actual or threatened alteration, improvement, demolition or removal of any of the Improvements without the prior consent of Mortgagee;

(l)      if Mortgagor shall continue to be in default under any term, covenant, or provision of the Note or any of the other Loan Documents, beyond applicable cure periods contained in those documents;

(m)      if Mortgagor fails to cure a default under any other term, covenant or provision of this Mortgage within thirty (30) days after Mortgagor first receives notice of any such default; provided, however, if such default is reasonably susceptible of cure, but not within such thirty (30) day period, then Mortgagor may be permitted up to an additional sixty (60) days to cure such default provided that Mortgagor diligently and continuously pursues such cure;

(n)      if, without Mortgagee's prior written consent, such consent not to be unreasonably withheld or delayed, (i) Mortgagor ceases to act as the manager of the Mortgaged Property, (ii) Mortgagor shall enter into a management agreement with any party or there is any material change in any management agreement approved by Mortgagee, (iii) the management of the Mortgaged Property is transferred to a person or entity other than Mortgagor, or (iv) there is any material change in the management, operation or control of the Mortgaged Property; or

(o)      if Mortgagor ceases to continuously operate the Mortgaged Property or any material portion thereof for any reason whatsoever (other than temporary cessation in connection with any repair or renovation thereof undertaken with the consent of Mortgagee).

22.      **Late Payment Charge and Default Rate.**

(a)      If any portion of the Debt is not paid within ten (10) days of the date such payment is due and payable, Mortgagor shall pay to Mortgagee upon demand an amount equal to ten percent (10%) of such unpaid portion of the Debt in order to defray a portion of the expenses incurred by Mortgagee in handling and processing such delinquent payment and to compensate Mortgagee for the loss of the use of such delinquent payment, and such amount shall be deemed to be secured by this Mortgage.

(b)      From and after the occurrence of an Event of Default, regardless of whether or not there has been a notice of default issued by Mortgagee, interest shall accrue on

21

the outstanding Principal Sum at a rate equal to lesser of (i) twenty-four percent (24%) per annum, or (ii) the maximum rate allowed by law (the "**Default Rate**"). The Default Rate shall remain in effect until any and all Events of Default shall have been cured. In addition, the Default Rate shall remain in effect during any period of default even upon the acceleration of the Debt. The Default Rate shall be in effect at all times after the maturity of the Debt (whether by acceleration or otherwise). Upon acceleration or maturity, the Default Rate shall remain in effect until all sums due under the Note, the Mortgage and the Loan Documents shall have been paid in full.

23.     **Right To Cure Defaults.**     Upon the occurrence of any Event of Default or if Mortgagor fails to make any payment or to do any act as herein provided, Mortgagee may, but without any obligation to do so and without notice to or demand on Mortgagor and without releasing Mortgagor from any obligation hereunder, make or do the same in such manner and to such extent as Mortgagee may deem necessary to protect the security hereof. Mortgagee is authorized to enter upon the Mortgaged Property for such purposes or appear in, defend, or bring any action or proceeding to protect its interest in the Mortgaged Property or to foreclose this Mortgage or collect the Debt, and the cost and expense thereof (including reasonable attorneys' fees and disbursements to the extent permitted by law), with interest at the Default Rate (as defined in the Note) for the period after notice from Mortgagee that such cost or expense was incurred to the date of payment to Mortgagee, shall constitute a portion of the Debt, shall be secured by this Mortgage and the other Loan Documents and shall be due and payable to Mortgagee upon demand.

24.     **Remedies** .

(a)     Upon the occurrence of any Event of Default, Mortgagee may take such action, without notice or demand, as it deems advisable to protect and enforce its rights against Mortgagor and in and to the Mortgaged Property by Mortgagee itself or otherwise, including, without limitation, the following actions, each of which may be pursued concurrently or otherwise, at such time and in such order as Mortgagee may determine, in its sole discretion, without impairing or otherwise affecting the other rights and remedies of Mortgagee:

(i)     declare the entire Debt to be immediately due and payable;

(ii)     institute a proceeding or proceedings, judicial or nonjudicial, by advertisement or otherwise, for the complete foreclosure of this Mortgage in which case the Mortgaged Property or any interest therein may be sold for cash or upon credit in one or more parcels or in several interests or portions and in any order or manner; notwithstanding the foregoing, upon default of the Mortgage or the Note, or other obligation secured thereby, Mortgagee shall have the right to sell the Premises by power of sale pursuant to Article 14 of the New York Real Property Actions and Proceedings Law.

(iii)     with or without entry, to the extent permitted and pursuant to the procedures provided by applicable law, institute proceedings for the partial foreclosure of this Mortgage for

22

the portion of the Debt then due and payable, subject to the continuing lien of this Mortgage for the balance of the Debt not then due;

(iv)     sell for cash or upon credit the Mortgaged Property or any part thereof and all estate, claim, demand, right, title and interest of Mortgagor therein and rights of redemption thereof, pursuant to the power of sale or otherwise, at one or more sales, as an entirety or in parcels, at such time and place, upon such terms and after such notice thereof as may be required or permitted by law;

(v)      institute an action, suit or proceeding in equity for the specific performance of any covenant, condition or agreement contained herein, or in any of the other Loan Documents;

(vi)     recover judgment on the Note either before, during or after any proceedings for the enforcement of this Mortgage;

(vii)    apply for the appointment of a trustee, receiver, liquidator or conservator of the Mortgaged Property, without notice and without regard for the adequacy of the security for the Debt and without regard for the solvency of the Mortgagor, any Guarantor or of any person, firm or other entity liable for the payment of the Debt;

(viii)   enforce Mortgagee's interest in the Leases and Rents and enter into or upon the Mortgaged Property, either personally or by its agents, nominees or attorneys and dispossess Mortgagor and its agents and servants therefrom, and thereupon Mortgagee may (A) use, operate, manage, control, insure, maintain, repair, restore and otherwise deal with all and every part of the Mortgaged Property and conduct the business thereat; (B) complete any construction on the Mortgaged Property in such manner and form as Mortgagee deems advisable; (C) make alterations, additions, renewals, replacements and improvements to or on the Mortgaged Property; (D) exercise all rights and powers of Mortgagor with respect to the Mortgaged Property, whether in the name of Mortgagor or otherwise, including, without limitation, the right to make, cancel, enforce or modify Leases, obtain and evict tenants, and demand, sue for, collect and receive all Rents; and (E) apply the receipts from the Mortgaged Property to the payment of Debt, after deducting therefrom all expenses (including, without limitation, reasonable attorneys' fees and disbursements) incurred in connection with the aforesaid operations and all amounts necessary to

23

pay the taxes, assessments insurance and other charges in connection with the Mortgaged Property, as well as just and reasonable compensation for the services of Mortgagee, its counsel, agents and employees; or

(ix)    pursue such other rights and remedies as may be available at law or in equity or under the Uniform Commercial Code.

In the event of a sale, by foreclosure or otherwise, of less than all of the Mortgaged Property, this Mortgage shall continue as a lien on the remaining portion of the Mortgaged Property.

(b)    The proceeds of any sale made under or by virtue of this paragraph, together with any other sums which then may be held by Mortgagee under this Mortgage, whether under the provisions of this paragraph or otherwise, shall be applied by Mortgagee to the payment of the Debt in such priority and proportion as Mortgagee in its sole discretion shall deem proper.

(c)    Mortgagee may adjourn from time to time any sale by it to be made under or by virtue of this Mortgage by announcement at the time and place appointed for such sale or for such adjourned sale or sales; and, except as otherwise provided by any applicable provision of law, Mortgagee, without further notice or publication, may make such sale at the time and place to which the same shall be so adjourned.

(d)    Upon the completion of any sale or sales pursuant hereto in accordance with all applicable laws, Mortgagee, or an officer of any court empowered to do so, shall execute and deliver to the accepted purchaser or purchasers a good and sufficient instrument, or good and sufficient instruments, conveying, assigning and transferring all estate, right, title and interest in and to the property and rights sold. Any sale or sales made under or by virtue of this paragraph, whether made under the power of sale herein granted or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, shall operate to divest all the estate, right, title, interest, claim and demand whatsoever, whether at law or in equity, of Mortgagor in and to the properties and rights so sold, and shall be a perpetual bar both at law and in equity against Mortgagor and against any and all persons claiming or who may claim the same, or any part thereof from, through or under Mortgagor.

(e)    Upon any sale made under or by virtue of this paragraph, whether made under a power of sale or under or by virtue of judicial proceedings or of a judgment or decree of foreclosure and sale, Mortgagee may bid for and acquire the Mortgaged Property or any part thereof and in lieu of paying cash therefor may make settlement for the purchase price by crediting upon the Debt the net sales price after deducting therefrom the expenses of the sale and costs of the action and any other sums which Mortgagee is authorized to deduct under this Mortgage and the other Loan Documents.

(f)    No recovery of any judgment by Mortgagee and no levy of an execution under any judgment upon the Mortgaged Property or upon any other property of Mortgagor shall affect in any manner or to any extent the lien of this Mortgage upon the Mortgaged Property or any part thereof, or any liens, rights, powers or remedies of Mortgagee hereunder, but such liens, rights, powers and remedies of Mortgagee shall continue unimpaired as before.

24

(g)     Mortgagee may terminate or rescind any proceeding or other action brought in connection with its exercise of the remedies provided in this paragraph at any time before the conclusion thereof, as determined in Mortgagee's sole discretion and without prejudice to Mortgagee.

(h)     Mortgagee may resort to any remedies and the security given by the Note, this Mortgage or in any of the other Loan Documents in whole or in part, and in such portions and in such order as determined by Mortgagee's sole discretion. No such action shall in any way be considered a waiver of any rights, benefits or remedies evidenced or provided by the Note, this Mortgage or in any of the other Loan Documents. The failure of Mortgagee to exercise any right, remedy or option provided in the Note, this Mortgage or any of the other Loan Documents shall not be deemed a waiver of such right, remedy or option or of any covenant or obligation secured by the Note, this Mortgage or any of the other Loan Documents. No acceptance by Mortgagee of any payment after the occurrence of any Event of Default and no payment by Mortgagee of any obligation for which Mortgagor is liable hereunder shall be deemed to waive or cure any Event of Default with respect to Mortgagor, or Mortgagor's liability to pay such obligation. No sale of all or any portion of the Mortgaged Property, no forbearance on the part of Mortgagee, and no extension of time for the payment of the whole or any portion of the Debt or any other indulgence given by Mortgagee to Mortgagor, shall operate to release or in any manner affect the interest of Mortgagee in the remaining Mortgaged Property or the liability of Mortgagor to pay the Debt. No waiver by Mortgagee shall be effective unless it is in writing and then only to the extent specifically stated. All costs and expenses of Mortgagee in exercising its rights and remedies under this Paragraph 24 (including, without limitation, reasonable attorneys' fees and disbursements to the extent permitted by law), shall be paid by Mortgagor immediately upon notice from Mortgagee, with interest at the Default Rate for the period after notice from Mortgagee and such costs and expenses shall constitute a portion of the Debt and shall be secured by this Mortgage.

(i)     The interests and rights of Mortgagee under the Note, this Mortgage or any of the other Loan Documents shall not be impaired by any indulgence, including, without limitation, (i) any renewal, extension or modification which Mortgagee may grant with respect to any of the Debt, (ii) any surrender, compromise, release, renewal, extension, exchange or substitution which Mortgagee may grant with respect to the Mortgaged Property or any portion thereof; or (iii) any release or indulgence granted to any maker, endorser, Guarantor or surety of any of the Debt.

25.     **Right of Entry**.     In addition to any other rights or remedies granted under this Mortgage, Mortgagee and its agents shall have the right to enter and inspect the Mortgaged Property with 24 hours notice at any reasonable time during the Term. The cost of such inspections or audits shall be borne by Mortgagor should Mortgagee determine that an Event of Default exists, including the cost of all follow up or additional investigations or inquiries deemed reasonably necessary by Mortgagee. The cost of such inspections, if not paid for by Mortgagor following demand, may be added to the principal balance of the sums due under the Note and this Mortgage and shall bear interest thereafter until paid at the Default Rate.

26.     **Security Agreement.**     This Mortgage is both a real property mortgage and a "security agreement" within the meaning of the Uniform Commercial Code. The Mortgaged Property includes both real and personal property and all other rights and interests,

whether tangible or intangible in nature, of Mortgagor in the Mortgaged Property. Mortgagor by executing and delivering this Mortgage has granted and hereby grants to Mortgagee, as security for the Debt, a security interest in the Mortgaged Property to the full extent that the Mortgaged Property may be subject to the Uniform Commercial Code (said portion of the Mortgaged Property so subject to the Uniform Commercial Code being called in this paragraph the **"Collateral"**). Mortgagor hereby agrees with Mortgagee to execute and deliver to Mortgagee, in form and substance satisfactory to Mortgagee, such financing statements and such further assurances as Mortgagee may from time to time, reasonably consider necessary to create, perfect, and preserve Mortgagee's security interest herein granted. This Mortgage shall also constitute a "fixture filing" for the purposes of the Uniform Commercial Code. As such, this Mortgage covers all items of the Collateral that are or are to become fixtures. Information concerning the security interest herein granted may be obtained from the parties at the addresses of the parties set forth in the first paragraph of this Mortgage. If an Event of Default shall occur, Mortgagee, in addition to any other rights and remedies which it may have, shall have and may exercise immediately and without demand, any and all rights and remedies granted to a secured party upon default under the Uniform Commercial Code, including, without limiting the generality of the foregoing, the right to take possession of the Collateral or any part thereof, and to take such other measures as Mortgagee may deem necessary for the care, protection and preservation of the Collateral. Upon request or demand of Mortgagee, Mortgagor shall at its expense assemble the Collateral and make it available to Mortgagee at a convenient place acceptable to Mortgagee. Mortgagor shall pay to Mortgagee on demand any and all expenses, including, without limitation, reasonable attorneys' fees and disbursements, incurred or paid by Mortgagee in protecting the interest in the Collateral and in enforcing the rights hereunder with respect to the Collateral. Any notice of sale, disposition or other intended action by Mortgagee with respect to the Collateral sent to Mortgagor in accordance with the provisions hereof at least five (5) days prior to such action, shall constitute commercially reasonable notice to Mortgagor. The proceeds of any disposition of the Collateral, or any part thereof, may be applied by Mortgagee to the payment of the Debt in such priority and proportions as Mortgagee in its sole discretion shall deem proper. In the event of any change in name, identity or structure of any Mortgagor, such Mortgagor shall notify Mortgagee thereof and promptly after request shall execute, file and record such Uniform Commercial Code forms as are necessary to maintain the priority of Mortgagee's lien upon and security interest in the Collateral, and shall pay all expenses and fees in connection with the filing and recording thereof. If Mortgagee shall require the filing or recording of additional Uniform Commercial Code forms or continuation statements, Mortgagor shall, promptly after request, execute, file and record such Uniform Commercial Code forms or continuation statements as Mortgagee shall deem necessary, and shall pay all expenses and fees in connection with the filing and recording thereof, it being understood and agreed, however, that no such additional documents shall increase Mortgagor's obligations under the Note, this Mortgage and the other Loan Documents. Mortgagor hereby irrevocably appoints Mortgagee as its attorney-in-fact, coupled with an interest, to file with the appropriate public office on its behalf any financing or other statements signed only by Mortgagee, as secured party, in connection with the Collateral covered by this Mortgage.

27.      **Actions and Proceedings.**   Mortgagee has the right to appear in and defend any action or proceeding brought with respect to the Mortgaged Property and to bring any action or proceeding, in the name and on behalf of Mortgagor, which Mortgagee, in its sole discretion, decides should be brought to protect their interest in the Mortgaged Property. Mortgagee shall, at its option, be subrogated to the lien of any mortgage or other security

instrument discharged in whole or in part by the Debt, and any such subrogation rights shall constitute additional security for the payment of the Debt.

28.        **Contest of Certain Claims.** Notwithstanding the provisions of Paragraphs 4 hereof, but subject in any event to the provisions of Paragraph 5 hereof, Mortgagor shall not be in default for failure to pay or discharge Taxes, Other Charges or mechanic's or materialman's lien asserted against the Mortgaged Property if, and so long as, (a) Mortgagor shall have notified Mortgagee of same within ten (10) days of obtaining knowledge thereof; (b) Mortgagor shall diligently and in good faith contest the same by appropriate legal proceedings which shall operate to prevent the enforcement or collection of the same and the sale of the Mortgaged Property or any part thereof, to satisfy the same; (c) Mortgagor shall have furnished to Mortgagee a cash deposit, or an indemnity bond satisfactory to Mortgagee with a surety satisfactory to Mortgagee, in the amount of the Taxes, Other Charges or mechanic's or materialman's lien claim, plus a reasonable additional sum to pay all costs, interest and penalties that may be imposed or incurred in connection therewith, to assure payment of the matters under contest and to prevent any sale or forfeiture of the Mortgaged Property or any part thereof; (d) Mortgagor shall promptly upon final determination thereof pay the amount of any such Taxes, Other Charges or claim so determined, together with all costs, interest and penalties which may be payable in connection therewith; (e) the failure to pay the Taxes, Other Charges or mechanic's or materialman's lien claim does not constitute a default under any other deed of trust, mortgage or security interest covering or affecting any part of the Mortgaged Property; and (f) notwithstanding the foregoing, Mortgagor shall immediately upon request of Mortgagee pay (and if Mortgagor shall fail so to do, Mortgagee may, but shall not be required to, pay or cause to be discharged or bonded against) any such Taxes, Other Charges or claim notwithstanding such contest, if in the opinion of Mortgagee, the Mortgaged Property or any part thereof or interest therein may be in danger of being sold, forfeited, foreclosed, terminated, cancelled or lost. Mortgagee may pay over any such cash deposit or part thereof to the claimant entitled thereto at any time when, in the judgment of Mortgagee, the entitlement of such claimant is established.

29.        **Recovery of Sums Required to be Paid.**    Mortgagee shall have the right from time to time to take action to recover any sum or sums which constitute a part of the Debt as the same become due, without regard to whether or not the balance of the Debt shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action of foreclosure, or any other action, for a default or defaults by Mortgagor existing at the time such earlier action was commenced.

30.        **Marshalling and Other Matters.**    Mortgagor hereby waives, to the extent permitted by law, the benefit of all appraisement, valuation, stay, extension, reinstatement and redemption laws now or hereafter in force and all rights of marshalling in the event of any sale hereunder of the Mortgaged Property or any part thereof or any interest therein. Further, Mortgagor hereby expressly waives any and all rights of redemption from sale under any order or decree of foreclosure of this Mortgage on behalf of Mortgagor, and on behalf of each and every person acquiring any interest in or title to the Mortgaged Property subsequent to the date of this Mortgage and on behalf of all persons to the extent permitted by applicable law.

31.        **Hazardous Substances.**    Mortgagor hereby represents and warrants to Mortgagee that, to the best of Mortgagor's knowledge: (a) the Mortgaged Property is not in direct or indirect violation of any local, state, federal or other governmental authority, statute, ordinance, code, order, decree, law, rule or regulation pertaining to or imposing liability

27

or standards of conduct concerning environmental regulation, contamination or clean-up including, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act, as amended (**"CERCLA"**), the Resource Conservation and Recovery Act, as amended (**"RCRA"**), the Emergency Planning and Community Right-to-Know Act of 1986, as amended, the Hazardous Substances Transportation Act, as amended, the Solid Waste Disposal Act, as amended, the Clean Water Act, as amended, the Clean Air Act, as amended, the Toxic Substance Control Act, as amended, the Safe Drinking Water Act, as amended, the Occupational Safety and Health Act, as amended, any state super-lien and environmental clean-up statutes and all regulations adopted in respect to the foregoing laws (collectively, **"Environmental Laws"**); (b) the Mortgaged Property is not subject to any private or governmental lien or judicial or administrative notice or action or inquiry, investigation or claim relating to hazardous and/or toxic, dangerous and/or regulated, substances, wastes, materials, raw materials which include hazardous constituents, pollutants or contaminants including without limitation, petroleum, tremolite, anthlophylie, actinolite or polychlorinated biphenyls and any other substances or materials which are included under or regulated by Environmental Laws or which are considered by scientific opinion to be otherwise dangerous in terms of the health, safety and welfare of humans (collectively, **"Hazardous Substances"**); (c) no Hazardous Substances are or have been (including the period prior to Mortgagor's acquisition of the Mortgaged Property), discharged, generated, treated, disposed of or stored on, incorporated in, or removed or transported from the Mortgaged Property other than in compliance with all Environmental Laws; (d) no Hazardous Substances are present in, on or under any nearby real property which could migrate to or otherwise affect the Mortgaged Property; and (e) no underground storage tanks exist on any of the Mortgaged Property. So long as Mortgagor owns or is in possession of the Mortgaged Property, Mortgagor (i) shall keep or cause the Mortgaged Property to be kept free from Hazardous Substances and in compliance with all Environmental Laws, (ii) shall promptly notify Mortgagee if Mortgagor shall become aware of any Hazardous Substances on or near the Mortgaged Property and/or if Mortgagor shall become aware that the Mortgaged Property is in direct or indirect violation of any Environmental Laws and/or if Mortgagor shall become aware of any condition on or near the Mortgaged Property which shall pose a threat to the health, safety or welfare of humans, (iii) shall remove such Hazardous Substances and/or cure such violations and/or remove such threats, as applicable, as required by law (or as shall be required by Mortgagee in the case of removal which is not required by law, but in response to the opinion of a licensed hydrogeologist, licensed environmental engineer or other qualified consultant engaged by Mortgagee (**"Mortgagee's Consultant"**), promptly after Mortgagor becomes aware of same, at Mortgagor's sole expense and (iv) shall comply with all of the recommendations contained in the environmental report which was delivered to Mortgagee in connection with the origination of the Loan. Nothing herein shall prevent Mortgagor from recovering such expenses from any other party that may be liable for such removal or cure. The obligations and liabilities of Mortgagor under this Paragraph 31 shall survive any termination, satisfaction, or assignment of this Mortgage and the exercise by Mortgagee of any of its rights or remedies hereunder, including, without limitation, the acquisition of the Mortgaged Property by foreclosure or a conveyance in lieu of foreclosure.

32.     **Asbestos.**     Mortgagor represents and warrants that, to the best of Mortgagor's knowledge, no asbestos or any substance or material containing asbestos (**"Asbestos"**) is located on the Mortgaged Property. Mortgagor shall not install in the Mortgaged Property, nor permit to be installed in the Mortgaged Property, Asbestos and shall remove any Asbestos promptly upon discovery to the satisfaction of Mortgagee, at Mortgagor's sole expense. Mortgagor shall in all instances comply with, and ensure compliance by all

occupants of the Mortgaged Property with, all applicable federal, state and local laws, ordinances, rules and regulations with respect to Asbestos, and shall keep the Mortgaged Property free and clear of any liens imposed pursuant to such laws, ordinances, rules or regulations.  In the event that Mortgagor receives any notice or advice from any governmental agency or any source whatsoever with respect to Asbestos on, affecting or installed on the Mortgaged Property, Mortgagor shall immediately notify Mortgagee.  The obligations and liabilities of Mortgagor under this Paragraph 32 shall survive any termination, satisfaction, or assignment of this Mortgage and the exercise by Mortgagee of any of its rights or remedies hereunder, including but not limited to, the acquisition of the Mortgaged Property by foreclosure or a conveyance in lieu of foreclosure.

      33.     **Environmental Monitoring.**     Mortgagor shall give prompt written notices to Mortgagee of: (a) any proceeding or inquiry by any party with respect to the presence of any Hazardous Substance or Asbestos on, under, from or about the Mortgaged Property, (b) all claims made or threatened by any third party against Mortgagor or the Mortgaged Property relating to any loss or injury resulting from any Hazardous Substance or Asbestos, and (c) Mortgagor's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Mortgaged Property that could cause the Mortgaged Property to be subject to any investigation or cleanup pursuant to any Environmental Law.  Mortgagor shall permit Mortgagee to join and participate in, as a party if it so elects, any legal proceedings or actions initiated with respect to the Mortgaged Property in connection with any Environmental Law or Hazardous Substance, and Mortgagor shall pay all attorneys' fees and disbursements incurred by Mortgagee in connection therewith.  Upon Mortgagee's reasonable request, at any time and from time to time while this Mortgage is in effect, Mortgagor shall provide (i) an inspection or audit of the Mortgaged Property prepared by a licensed hydrogeologist or licensed environmental engineer approved by Mortgagee indicating the presence or absence of Hazardous Substances on, in or near the Mortgaged Property, and (ii) an inspection or audit of the Mortgaged Property prepared by a duly qualified engineering or consulting firm approved by Mortgagee, indicating the presence or absence of Asbestos on the Mortgaged Property.  The cost and expense of such audit or inspection shall be paid by Mortgagor.  If Mortgagor fails to provide any inspection or audit required pursuant to this Paragraph 33 within thirty (30) days after such request, Mortgagee may order same, and Mortgagor hereby grants to Mortgagee and its employees and agents access to the Mortgaged Property and a license to undertake such inspection or audit.  The cost of such inspection or audit may be added to the Debt and shall bear interest thereafter until paid at the Default Rate.  In the event that any environmental site assessment report prepared in connection with such inspection or audit recommends that an operations and maintenance plan be implemented for Asbestos or any Hazardous Substance, Mortgagor shall cause such operations and maintenance plan to be prepared and implemented at Mortgagor's expense upon request of Mortgagee.  In the event that any investigation, site monitoring, containment cleanup, removal, restoration or other work of any kind is reasonably necessary or desirable under an applicable Environmental Law (the **"Remedial Work"**), Mortgagor shall commence all such Remedial Work within thirty (30) days after written demand by Mortgagee for performance thereof (or such shorter period of time as may be required under applicable law) and thereafter diligently prosecute to completion all such Remedial Work within ninety (90) days after written demand by Mortgagee for performance thereof (or such shorter period of time as may be required under applicable law).  All Remedial Work shall be performed by contractors approved in advance by Mortgagee, and under the supervision of a consulting engineer approved by Mortgagee.  All costs and expenses of such Remedial Work shall be paid by Mortgagor including, without limitation, Mortgagee's attorneys' fees and disbursements

29

incurred in connection with monitoring or review of such Remedial Work. In the event Mortgagor shall fail to timely commence, or cause to be commenced, or fail to diligently prosecute to completion, such Remedial Work, Mortgagee may, but shall not be required to, cause such Remedial Work to be performed, and all costs and expenses thereof, or incurred in connection therewith, may be added to the Debt and shall bear interest thereafter until paid at the Default Rate.

34. **Indemnification.** In addition to any other indemnifications provided herein or in the other Loan Documents, Mortgagor shall protect, defend, indemnify and save harmless Mortgagee from and against all liabilities, obligations, claims, demands, damages, penalties, causes of action, losses, fines, costs and expenses (including, without limitation, reasonable attorneys' fees, whether in-house staff, retained firms, or otherwise, and disbursements), imposed upon or incurred by or asserted against Mortgagee by reason of (a) ownership of this Mortgage, the Mortgaged Property or any interest therein or receipt of any Rents; (b) any accident, injury to or death of persons or loss of or damage to property occurring in, on or about the Mortgaged Property or any part thereof or on the adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (c) any use, nonuse or condition in, on or about the Mortgaged Property or any part thereof or on adjoining sidewalks, curbs, adjacent property or adjacent parking areas, streets or ways; (d) any failure on the part of Mortgagor to perform or comply with any of the terms of this Mortgage; (e) performance of any labor or services or the furnishing of any materials or other property in respect of the Mortgaged Property or any part thereof; (f) the presence, disposal, escape, seepage, leakage, spillage, discharge, emission, release, or threatened release of any Hazardous Substance or Asbestos on, from, or affecting the Mortgaged Property; (g) any personal injury (including wrongful death) or property damage (real or personal) arising out of or related to such Hazardous Substance or Asbestos; (h) any lawsuit brought or threatened, settlement reached, or government order relating to such Hazardous Substance or Asbestos; (i) any violation of the Environmental Laws, which are based upon or in any way related to such Hazardous Substance or Asbestos including, without limitation, the costs and expenses of any Remedial Work, attorneys' and consultant fees and disbursements, investigation and laboratory fees, court costs, and litigation expenses; (j) any failure of the Mortgaged Property to comply with any Access Laws; (k) any representation or warranty made in the Note, this Mortgage or any of the other Loan Documents being false or misleading in any material respect as of the date such representation or warranty was made; (l) any claim by brokers, finders or similar persons claiming to be entitled to a commission in connection with any Lease or other transaction involving the Mortgaged Property or any part thereof under any legal requirement or any liability asserted against Mortgagee with respect thereto, including mortgage brokerage fees; (m) any ongoing matters arising out of the transaction contemplated by this Mortgage, the Note and the Loan Documents and the Debt (including, but not limited to, all costs and any reappraisals of the Mortgaged Property or any other collateral for the Debt), (n) the claims of any lessee of any or any portion of the Mortgaged Property or any person acting through or under any lessee or otherwise arising under or as a consequence of any Lease, (o) any amounts payable to Mortgagee by reason of the application of this paragraph shall be secured by this Mortgage and shall become immediately due and payable and shall bear interest at the Default Rate from the date the loss or damage is sustained by Mortgagee until paid and any amendment to, or restructuring of, the Debt and the Loan Documents, (p) any and all lawful action that may be taken by Mortgagee in connection with the enforcement of the provisions of this Mortgage or the Note or any of the other Loan Documents, whether or not suit is filed in connection with the same, or in connection with the Mortgagor, any Guarantor and/or any partner, member, joint venturer or shareholder thereof becoming a party to

a voluntary or involuntary federal or state bankruptcy, insolvency or similar proceeding, and (q) the past, current and/or future sale or offering for sale of any interests in Mortgagor, including, without limitation, liabilities under any applicable securities or blue sky laws. All sums expended by Mortgagee shall be payable on demand and, until reimbursed by Mortgagor pursuant hereto, shall be deemed additional principal of the Debt and shall bear interest at the Default Rate. The obligations and liabilities of Mortgagor under this <u>Paragraph 34</u> shall survive the termination, satisfaction, or assignment of this Mortgage and the exercise by Mortgagee of any of its rights or remedies hereunder, including, but not limited to, the acquisition of the Mortgaged Property by foreclosure or a conveyance in lieu of foreclosure.

35. **Notices.** Any notice, demand, statement, request or consent made hereunder shall be in writing, addressed to the address, as set forth above, of the party to whom such notice is to be given, or to such other address as Mortgagor or Mortgagee, as the case may be, shall designate in writing, and shall be deemed to be received by the addressee on (i) the day such notice is personally delivered to such addressee, (ii) the third (3rd) day following the day such notice is deposited with the United States postal service first class certified mail, return receipt requested, (iii) the day following the day on which such notice is delivered to a nationally recognized overnight courier delivery service, or (iv) the day facsimile transmission is confirmed after transmission of such notice by telecopy to such telecopier number as Mortgagor or Mortgagee, as the case may be, shall have previously designated in writing.

36. **Authority.** (a) Mortgagor (and the undersigned representative of Mortgagor, if any) represent and warrant that it (or they, as the case may be) has full power, authority and right to execute, deliver and perform its obligations pursuant to this Mortgage, and to mortgage, give, grant, bargain, sell, alien, enfeoff, convey, confirm, warrant, pledge, hypothecate and assign the Mortgaged Property pursuant to the terms hereof and to keep and observe all of the terms of this Mortgage on Mortgagor's part to be performed; and (b) Mortgagor represents and warrants that Mortgagor is not a "foreign person" within the meaning of Section 1445(f)(3) of the Internal Revenue Code of 1986, as amended and the related Treasury Department regulations, including temporary regulations.

37. **Non-Waiver.** The failure of Mortgagee to insist upon strict performance of any term hereof shall not be deemed to be a waiver of any term of this Mortgage. Any consent or approval by Mortgagee in any single instance shall not be deemed or construed to be Mortgagee's consent or approval in any like matter arising at a subsequent date. Mortgagor shall not be relieved of Mortgagor's obligations hereunder by reason of (a) the failure of Mortgagee to comply with any request of Mortgagor or Guarantor to take any action to foreclose this Mortgage or otherwise enforce any of the provisions hereof or of the Note, or any of the other Loan Documents, (b) the release, regardless of consideration, of the whole or any part of the Mortgaged Property, or of any person liable for the Debt or any portion thereof, or (c) any agreement or stipulation by Mortgagee extending the time of payment or otherwise modifying or supplementing the terms of the Note, this Mortgage or any of the other Loan Documents. Mortgagee may resort for the payment of the Debt to any other security held by Mortgagee in such order and manner as Mortgagee, in its sole discretion, may elect. Mortgagee may take action to recover the Debt, or any portion thereof, or to enforce any covenant hereof without prejudice to the right of Mortgagee thereafter to foreclosure this Mortgage. The rights and remedies of Mortgagee under this Mortgage shall be separate, distinct and cumulative and none shall be given effect to the exclusion of the others. No act of Mortgagee shall be construed as an election to proceed under any one provision herein to the exclusion of any other provision.

31

Mortgagee shall not be limited exclusively to the rights and remedies herein stated but shall be entitled to every right and remedy now or hereafter afforded at law or in equity.

38.   **No Oral Change.**   This Mortgage, and any provisions hereof, may not be modified, amended, waived, extended, changed, discharged or terminated orally or by any act or failure to act on the part of Mortgagor or Mortgagee, but only by an agreement in writing signed by the party against whom enforcement of any modification, amendment, waiver, extension, change, discharge or termination is sought.

39.   **Liability.**   If Mortgagor consists of more than one person, the obligations and liabilities of each such person hereunder shall be joint and several. Subject to the provisions hereof requiring Mortgagee's consent to any transfer of the Mortgaged Property, this Mortgage shall be binding upon and inure to the benefit of Mortgagor and Mortgagee and their respective successors and assigns forever.

40.   **Inapplicable Provision.**   If any term, covenant or condition of the Note or this Mortgage is held to be invalid, illegal or unenforceable in any respect, the Note and this Mortgage shall be construed without such provision.

41.   **Headings, Etc.**   The headings and captions of various paragraphs of this Mortgage are for convenience of reference only and are not to be construed as defining or limiting, in any way, the scope or intent of the provisions hereof.

42.   **Duplicate Originals.**   This Mortgage may be executed in any number of duplicate originals and each such duplicate original shall be deemed to be an original.

43.   **Definitions.**   Unless the context clearly indicates a contrary intent or unless otherwise specifically provided herein, words used in this Mortgage may be used interchangeably in singular or plural form and the word **"Mortgagor"** shall mean "each Mortgagor and any subsequent owner or owners of the Mortgaged Property or any part thereof or any interest therein," the word "Mortgagee" shall mean "Mortgagee and any subsequent holder of the Note," the word "Note" shall mean "the Note and any other evidence of indebtedness secured by this Mortgage," the word "person" shall include an individual, corporation, partnership, trust, unincorporated association, government, governmental authority, and any other entity, the words **"Mortgaged Property"** shall include any portion of the Mortgaged Property and any interest therein and the words **"attorneys' fees"** shall include any and all attorneys' fees, paralegal and law clerk fees, including, without limitation, fees at the pre-trial, trial and appellate levels incurred or paid by Mortgagee in protecting its interest in the Mortgaged Property and Collateral and enforcing its rights hereunder. Whenever the context may require, any pronouns used herein shall include the corresponding masculine, feminine or neuter forms, and the singular form of nouns and pronouns shall include the plural and vice versa.

44.   **Assignments.**   Mortgagee shall have the right to assign or transfer its rights under this Mortgage without limitation. Any assignee or transferee shall be entitled to all the benefits afforded Mortgagee under this Mortgage.

45.   **Waiver of Jury Trial.**   **MORTGAGOR HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT**

32

BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE
EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH
REGARD TO THE NOTE, THIS MORTGAGE, OR THE OTHER LOAN
DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING
IN CONNECTION THEREWITH. THIS WAIVER OF RIGHT TO TRIAL BY JURY IS
GIVEN KNOWINGLY AND VOLUNTARILY BY MORTGAGOR, AND IS INTENDED
TO ENCOMPASS INDIVIDUALLY EACH INSTANCE AND EACH ISSUE AS TO
WHICH THE RIGHT TO A TRIAL BY JURY WOULD OTHERWISE ACCRUE.
MORTGAGEE IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH
IN ANY PROCEEDING AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY
MORTGAGOR.

46.    **Miscellaneous.**

(a)    The Loan Documents contain the entire agreement between
Mortgagor and Mortgagee relating to or connected with the Loan. Any other agreements relating
to or connected with the Loan not expressly set forth in the Loan Documents are null and void
and superseded in their entirety by the provisions of the Loan Documents.

(b)    Mortgagor represents and warrants to Mortgagee that there
has not been committed by Mortgagor or any other person in occupancy of or involved with the
operation or use of the Mortgaged Property any act or omission affording the federal government
or any state or local government the right of forfeiture as against the Mortgaged Property or any
part thereof or any monies paid in performance of Mortgagor's obligations under the Note or
under any of the other Loan Documents. Mortgagor hereby covenants and agrees not to commit,
permit or suffer to exist any act, omission or circumstance affording such right of forfeiture. In
furtherance thereof, Mortgagor hereby indemnifies Mortgagee and agrees to defend and hold
Mortgagee harmless from and against any loss, damage or injury by reason of the breach of the
covenants and agreements or the representations and warranties set forth in this paragraph.
Without limiting the generality of the foregoing, the filing of formal charges or the
commencement of proceedings against Mortgagor or all or any part of the Mortgaged Property
under any federal or state law for which forfeiture of the Mortgaged Property or any part thereof
or of any monies paid in performance of Mortgagor's obligations under the Loan Documents is a
potential result, shall, at the election of Mortgagee, constitute an Event of Default hereunder
without notice or opportunity to cure.

(c)    Mortgagor acknowledges that, with respect to the Loan,
Mortgagor is relying solely on its own judgment and advisors in entering into the Loan without
relying in any manner on any statements, representations or recommendations of Mortgagee or
any parent, subsidiary or affiliate of Mortgagee. Mortgagor acknowledges that Mortgagee
engages in the business of real estate financings and other real estate transactions and
investments which may be viewed as adverse to or competitive with the business of the
Mortgagor or its affiliates. Mortgagor acknowledges that it is represented by competent counsel
and has consulted counsel before executing the Loan Documents.

(d)    Mortgagor covenants and agrees to pay Mortgagee upon
receipt of written notice from Mortgagee, all reasonable costs and expenses (including, without
limitation, reasonable attorneys' fees and disbursements and the costs and expenses of any title
insurance company, appraisers, engineers or surveyors) incurred by Mortgagee in connection

with (i) the preparation, negotiation, execution and delivery of this Mortgage and the other Loan Documents; (ii) Mortgagor's performance of and compliance with Mortgagor's respective agreements and covenants contained in this Mortgage and the other Loan Documents on its part to be performed or complied with after the date hereof; (iii) Mortgagee's performance and compliance with all agreements and conditions contained in this Mortgage and the other Loan Documents on its part to be performed or complied with after the date hereof; (iv) the negotiation, preparation, execution, delivery and administration of any consents, amendments, waivers or other modifications to this Mortgage and the other Loan Documents; and (v) the filing and recording fees and expenses, title insurance fees and expenses, and other similar expenses incurred in creating and perfecting the lien in favor of Mortgagee pursuant to this Mortgage and the other Loan Documents.

(e)     This Mortgage shall be governed by and construed in accordance with the laws of the State of New York and the applicable laws of the United States of America.

(f)     Mortgagee shall not be obligated to perform or discharge any obligation of the Mortgagor as a result of the collateral assignment hereby effected, and the Mortgagor hereby agrees to indemnify and hold the Mortgagee harmless from and against any and all liability, loss or damage which the Mortgagee may incur by reason of any act of the Mortgagee under this Mortgage, other than as a result of the Mortgagee's willful misconduct or gross negligence. Should the Mortgagee incur any such liability, loss or damage by reason of this Mortgage and which is covered by the foregoing indemnity, or in defense against any such claims or demands, or perform any acts or covenants on the part of Mortgagor to be performed under any lease, or pay for the account of the Mortgagor any and all sums, costs and expenses for the discharge of taxes, assessments, water rents or other liens against the Mortgaged Property or any part thereof, or on account of insurance premiums or repairs, and also any amounts and expenses necessary to perform any covenants and conditions to be performed on the part of the Mortgagor under any lease, the amount thereof, including costs, expenses and attorneys' fees, together with interest thereon at the Default Rate from the date such expenses were paid by the Mortgagee to the date of payment to the Mortgagee by the Mortgagor, shall be included in the obligations secured by this Mortgage, and the Mortgagor shall reimburse the Mortgagee therefor upon demand.

(g)     Anything in this Mortgage or the other Loan Documents to the contrary notwithstanding, Mortgagor shall indemnify and hold Mortgagee harmless and defend it at Mortgagor's sole cost and expense against any loss or liability, cost or expense (including, without limitation, reasonable attorneys' fees and disbursements of Mortgagee's counsel, whether in-house staff, retained firms, or otherwise) and all claims, actions, procedures and suits arising out of or in connection with (a) any ongoing matters arising out of the transaction contemplated by this Mortgage, the Note and the Loan Documents and the Debt (including, but not limited to, all costs and any reappraisals of the Mortgaged Property or any other collateral for the Debt, (b) any amendment to, or restructuring of, the Debt and the Loan Documents, (c) any and all lawful action that may be taken by Mortgagee in connection with the enforcement of the provisions of this Mortgage or the Note or any of the other Loan Documents, whether or not suit is filed in connection with the same, or in connection with the Mortgagor, any Guarantor and/or any partner, member, joint venturer or shareholder thereof becoming a party to a voluntary or involuntary federal or state bankruptcy, insolvency or similar proceeding, and (d) the past, current and/or future sale or offering for sale of any interests in Mortgagor,

34

including, without limitation, liabilities under any applicable securities or blue sky laws. All sums expended by Mortgagee shall be payable on demand and, until reimbursed by Mortgagor pursuant hereto, shall be deemed additional principal of the Debt and shall bear interest at the Default Rate.

      47.      **Section 291-f Agreement.**   This Mortgage is intended to be, and shall operate as, the agreement described in Section 291-f of the Real Property Law of the State of New York and shall be entitled to the benefits afforded thereby. Mortgagor shall (unless such notice is contained in such commercial lease) deliver notice of this Mortgage in form and substance reasonably acceptable to Mortgagee, to all present and future holders of any interest in any commercial lease, by assignment or otherwise, and shall take such other action as may now or hereafter be reasonably required to afford Mortgagee the fall protections and benefits of Section 291f. Mortgagor shall request the recipient of any such notice to acknowledge the receipt thereof.

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**
**SIGNATURE PAGE TO FOLLOW**

IN WITNESS WHEREOF, Mortgagor has executed this instrument the day and year first above written.

MORTGAGOR:

_Marcia Gordon_

MARCIA GORDON


STATE OF GEORGIA              )
                             ) ss:
COUNTY OF DeKalb             )

On the 20th day of November in the year 2008, before me, the undersigned, a Notary Public in and for said State, personally appeared, MARCIA GORDON, sworn to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

Notary Public

K G HUGHES
MY COMMISSION EXPIRES
MAY
07
2011
HENRY CO., GEORGIA
NOTARY PUBLIC

SEAL


**MORTGAGEE SIGNATURE PAGE TO FOLLOW**

MORTGAGEE:

**EASTERN SAVINGS BANK, FSB**

By: _Kirk Warner_____

Kirk Warner, Vice-President


STATE OF MARYLAND        }
                         }ss.
COUNTY OF ~~BALTIMORE~~ *Carroll*   }

On the **20th** day of November, 2008, before me, the undersigned, personally appeared, **Kirk Warner**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument, and that such individual made such appearance before the undersigned in the City of Baltimore and the State of Maryland.

_____
Notary Public

**STACEY L. GERALL**
**NOTARY PUBLIC**
**CARROLL COUNTY, M**
My Commission Expires 10/01/09

**|SEAL**

## SCHEDULE A



## *First American Title Insurance Company of New York*

**Title No. 3008-254**

### SCHEDULE "A"

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF BROOKLYN, COUNTY OF KINGS, CITY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF CHURCH AVENUE AND THE EASTERLY SIDE OF EAST 53RD STREET;

RUNNING THENCE EASTERLY ALONG THE SOUTHERLY SIDE OF CHURCH AVENUE, 20.01 FEET;

THENCE SOUTHERLY PARALLEL WITH EAST 53RD STREET THROUGH A PARTY WALL, 82.24 FEET;

THENCE WESTERLY PARALLEL WITH SNYDER AVENUE, 20 FEET TO THE EASTERLY SIDE OF EAST 53RD STREET;

THENCE NORTHERLY ALONG THE EASTERLY SIDE OF EAST 53RD STREET, 81.87 FEET TO THE CORNER, THE POINT OR PLACE OF BEGINNING.

**THE** policy to be issued under this report will insure the title to such buildings and improvements erected on the premises, which by law constitute real property.

**FOR CONVEYANCING ONLY: TOGETHER** with all the right, title and interest of the party of the first part, of in and to the land lying in the street in front of and adjoining said premises.

## EXHIBIT B

## EXISTING MORTGAGES

1. MORTGAGE made by MARCIA GORDON -to- EASTERN SAVINGS BANK, FSB, dated March 31, 2006, and recorded on April 20, 2006 as CRFN 2006000220034, to secure the sum of $335,000.00 and interest, which Mortgage currently secures the unpaid principal balance of $332,626.28.

2. GAP MORTGAGE made by MARCIA GORDON -to- EASTERN SAVINGS BANK, FSB, dated November 20, 2008, and intended to be immediately recorded, to secure the sum of $30,079.19 and interest.

   MORTGAGE CONSOLIDATION, MODIFICATION AND EXTENSION AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT made between MARCIA GORDON -and- EASTERN SAVINGS BANK, FSB, dated November 20, 2008, and intended to be immediately recorded.

   Consolidates Mortgages 1 and 2 to form a single, first lien of $362,705.47.

**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**



2008121000341002001S7C44

| SUPPORTING DOCUMENT COVER PAGE | PAGE 1 OF 1 |
|---|---|

Document ID: 2008121000341002    Document Date: 11-20-2008    Preparation Date: 12-10-2008
Document Type: AGREEMENT

**SUPPORTING DOCUMENTS SUBMITTED:**

Page Count

  255 MORTGAGE TAX EXEMPT AFFIDAVIT                       2

3008-254963

STATE OF GEORGIA )
                  : ss.:
COUNTY OF *DeKalb* )

      Marcia Gordon being duly sworn, deposes and says:

      I am the Mortgagor under the mortgages as set forth on the attached schedule which encumber the property located in the County of Kings, State of New York, known by the street address of 5302 Church Avenue, Brooklyn, NY 11203, as more fully set forth in such mortgages.

      The mortgage tax due on the aforesaid mortgages was paid in full at the time of recording.

      There is offered for recording simultaneously herewith a Mortgage Consolidation, Modification and Extension Agreement, Assignment of Leases and Rents and Security Agreement, dated November 20, 2008 between Marcia Gordon, as Mortgagor, and Eastern Savings Bank, fsb, as Mortgagee (the "Consolidation Agreement"). The Mortgage, as consolidated is reflected in the Mortgage Schedule annexed hereto as Schedule "A".

      After the maximum amount became secured thereby, no reloans or readvances have become secured thereunder to the date of execution of the said supplemental instrument.

      The said Consolidation Agreement offered for recording does not create or secure any new or further indebtedness or obligation other than the principal indebtedness or obligation secured by or which under any contingency may be secured by the above mentioned primary mortgages.

      **WHEREFORE,** deponent respectfully requests that said Consolidation Agreement be declared exempt from taxation pursuant to the provisions of Section 255 of Article 11 of the Tax Law.

                              MARCIA GORDON

Sworn to before me this
20th day of November, 2008

Notary Public

**SCHEDULE "A"**
**MORTGAGE SCHEDULE**

1. MORTGAGE made by MARCIA GORDON  -to- EASTERN SAVINGS BANK, FSB, dated March 31, 2006, and recorded on April 20, 2006 as CRFN 2006000220034, to secure the sum of $335,000.00 and interest, which Mortgage currently secures the unpaid principal balance of $332,626.28.

2. GAP MORTGAGE made by MARCIA GORDON -to- EASTERN SAVINGS BANK, FSB, dated November 20, 2008, and intended to be immediately recorded, to secure the sum of $30,079.19 and interest.

   MORTGAGE CONSOLIDATION, MODIFICATION AND EXTENSION AGREEMENT, ASSIGNMENT OF LEASES AND RENTS AND SECURITY AGREEMENT made between MARCIA GORDON -and- EASTERN SAVINGS BANK, FSB, dated November 20, 2008, and intended to be immediately recorded.

   Consolidates Mortgages 1 and 2 to form a single, first lien of $362,705.47.

2

 *First American Title*

Title No.: **3050-380156**

## SCHEDULE B

**Mortgages of Record**

**Mortgages to be Foreclosed:**

Mortgage made by Marcia Gordon to Eastern Savings Bank, FSB for $335,000.00 and interest, dated March 31, 2006 and recorded April 20, 2006 in (as) CRFN 2006000220034.

Mortgage made by Marcia Gordon to Eastern Savings Bank, FSB for $30,079.19 and interest, dated November 20, 2008 and recorded December 16, 2008 in (as) CRFN 2008000477100.

The mortgages above were consolidated and modified so as to constitute a single lien of $362,705.47 and interest, by agreement dated November 20, 2008 and recorded December 16, 2008 in (as) CRFN 2008000477101.

**Prior Mortgages:**

Mortgage made by Salem Muhsen Alethmani to Henry Michael Feder and Bella Feder for $35,000.00 and interest, dated May 28, 1980 and recorded June 3, 1980 in (as) Reel 1163 page 1635.

Mortgage made by Marcia Gordon to Ensor Enterprises Co. for $19,000.00 and interest, dated January 31, 1997 and recorded March 28, 1997 in (as) Reel 3909 page 860.

**Subordinate Mortgages:**    **None**

## BORROWER'S AFFIDAVIT

BEFORE ME, the undersigned authority, on this day personally appeared MARCIA GORDON (the "Affiant") who, first being duly sworn upon their oath, deposes and says that:

a)     The undersigned is the Borrower in connection with the loan hereinafter referred to.

b)     In such capacity, they have personal knowledge of all facts sworn to in this Affidavit.

c)     The Borrower owns certain real estate, a legal description of which is attached hereto as Exhibit "A" and made a part hereof.

d)     No oral or written contracts for improvements agreed to or executed by Borrower or affidavits of such contracts have been filed for record with the County Clerk of the County where the real estate is located nor (i) has the Borrower or its agents entered into any oral or written contracts for work on or materials to be delivered to the real estate, (ii) have materials been delivered to the real estate, or (iii) has work commenced on the real estate on behalf of the Borrower prior to or contemporaneously with the execution of this Affidavit.

e)     There is no outstanding indebtedness for equipment, appliances, fixtures, or other personalty to be attached or delivered to the real estate.

f)     To the best of Borrower's knowledge, there are no unpaid bills of any nature, including but not limited to that due for the services of any architects, engineers, or surveyors for work done in connection with the real estate.

g)     To the best of Borrower's knowledge, all litigation currently pending against the Borrower of the below described Promissory Note is listed in Exhibit "B" attached hereto and made a part hereof for all purposes.

h)     To the best of Borrower's knowledge, there are not any suits, judgments, bankruptcies or executions pending in any court that could in any way affect the title to said real estate, or constitute a lien thereon, and said Borrower is not a surety on any bond wherein, through the default of the principal thereof, a lien against said real estate would be created

i)     The undersigned warrants that the extension of credit evidenced by the note hereinafter referred to is solely for business or commercial purposes, other than agricultural purposes. The undersigned warrants that the credit transaction evidenced by the hereinafter described note is specifically exempted under Section 226.3(a) of Regulation Z issued by the Board of Governors of the Federal Reserve System and under Title I (Consumer Credit Cost Disclosure) and Title V (General Provisions) of the Consumer Credit Protection Act and that no disclosures are required to be given under such regulations and federal laws in connection with the hereinafter described transaction.

j)     All of the funds to be derived by Borrower from a loan from EASTERN SAVINGS BANK,

FSB ("Lender"), as evidenced by a Promissory Note in the amount of $335,000.00, of even date herewith, shall be used for the business purposes of the Borrower and for no other purpose whatsoever.

k)      The undersigned is a knowledgeable businessperson with experience in real estate transactions and real estate financing, and the Borrower in its transactions with the Lender has had the opportunity to be represented by legal counsel independent of the Lender. The undersigned and the Borrower acknowledge that the counsel for the Lender has acted only as legal counsel to the Lender and has not in any manner undertaken to assist or render legal advice to the Borrower concerning the above described loan, that the Lender's counsel represents only the Lender and no other party involved in the loan and that the Borrower is not relying upon any opinions or representations made by Lender's counsel.

l)      This Affidavit is made by the undersigned to induce the Lender to make a loan to Borrower in the amount of $335,000.00 and to induce any title company (the "Title Company") to insure a valid first lien in such amount, and it is in reliance upon the truth of the statements contained in this Affidavit that the Lender makes such loan and the Title Company issues its mortgagee's title policy to insure such lien.

m)     Borrower understands that the Promissory Note, the Mortgage, Assignment of Leases and Rents and Security Agreement and other documents securing the Promissory Note (collectively the "Loan Documents") provide for the application of New York law in interpreting the parties rights and remedies under the Loan Documents and to any disputes between the parties and for exclusive jurisdiction of such disputes (other than with respect to any foreclosure proceeding) in New York and that New York law shall apply in interpreting the parties rights and remedies under the Loan Documents, unless preempted by Federal Law or United States Statute. Borrower has reviewed these provisions with Borrower's counsel and has agreed to execute the Loan Documents with full knowledge of the terms thereof.

Marcia Gordon 3/31/06
MARCIA GORDON

Dated: March 31, 2006

STATE OF GEORGIA )
                         ) ss:

COUNTY OF )

        On the 31st day of March in the year 2006 before me, the undersigned, a Notary Public in and for said State, personally appeared, MARCIA GORDON, sworn to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed this instrument.

                                          Notary Public

SARA DEMAS
NOTARY PUBLIC, GWINNETT COUNTY, GA
MY COMMISSION EXPIRES FEBRUARY 26, 2010

EXHIBIT "A"

## LEGAL DESCRIPTION

ALL, THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF
BROOKLYN, COUNTY OF KINGS, CITY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF CHURCH AVENUE AND THE EASTERLY SIDE OF EAST 53RD STREET;

RUNNING THENCE EASTERLY ALONG THE SOUTHERLY SIDE OF CHURCH AVENUE, 20.01 FEET;

THENCE SOUTHERLY PARALLEL WITH EAST 53RD STREET THROUGH A PARTY WALL, 82.24 FEET;

THENCE WESTERLY PARALLEL WITH SNYDER AVENUE, 20 FEET TO THE EASTERLY SIDE OF EAST 53RD STREET;

THENCE NORTHERLY ALONG THE EASTERLY SIDE OF EAST 53RD STREET, 81.87 FEET TO THE CORNER, THE POINT OR PLACE OF BEGINNING.

EXHIBIT "B"

<u>List of Litigation</u>

[Borrower to provide a list of all litigation claims or, if there are none, state: "NONE"]

"None"

**EASTERN SAVINGS BANK, fsb**
**EXECUTIVE PLAZA II**
**11350 McCORMICK ROAD, SUITE 200**
**HUNT VALLEY, MD 21031**
**PHONE: (800) 982-7114, EXT 6281**

**PAYOFF STATEMENT**

| | | | |
|---|---|---|---|
| **LOAN NUMBER:** | 50  321697724 | **DATE:** | February 14, 2014 |
| **BORROWER(S):** | MARCIA GORDON | **SENT TO:** | ESB |
| | | | TERRY BROWN |
| | | **PHONE:** | |
| | | **FAX:** | |

| | |
|---|---|
| **PROPERTY** | 5302 CHURCH AVE |
| **ADDRESS:** | BROOKLYN NY 11203-1203 |

In reply to your request for a payoff on the above referenced property, please be advised that **this payoff is effective through 2/19/2014.** If settlement has not taken place by the effective date, please send a new request to fax number (410) 568-4444.

Funds must be in the form of a certified or cashier check or sent via wire transfer. <u>**WIRING INSTRUCTIONS:**</u>  Wire to Eastern Savings Bank, fsb, Executive Plaza II, 11350 McCormick Road, Suite 200, Hunt Valley, MD 21031; ABA 252070639; Attention: Loan Servicing Payoff.  Please reference the borrower's last name and loan number and include the sender's company name and contact information.

**ALL FUNDS RECEIVED AFTER CLOSE OF BUSINESS (4:00 PM EST) WILL BE CREDITED TO THE ACCOUNT ON THE FOLLOWING BUSINESS DAY AND WILL BE CHARGED AND ADDITIONAL DAY'S INTEREST.**

Eastern Savings Bank, fsb will prepare and record all satisfaction documents.

Please provide the borrower's forwarding address in the event that we may need to contact them regarding a refund, overage check, or other correspondence.  Thank you.

| | |
|---|---|
| PRINCIPAL BALANCE | $355,092.64 |
| INTEREST | $294,765.44 |
| LATE CHARGE(S) | $17,941.29 |
| ADD - NEGATIVE ESCROW | -$76,718.73 |
| INTEREST - NEG ESCROW | $31,266.72 |
| ATTORNEY FEES/COSTS | $2,425.00 |
| MISCELLANEOUS BALANCE | $118,854.38 |
| RELEASE RECORDING FEE | $166.00 |
| OTHER: INSPECTION FEES | $300.00 |
| TOTAL DUE AS OF    2/19/2014 | $897,530.20 |
| PER DIEM INTEREST        $287.88 | |

The payoff itemization shown above is subject to final verification upon receipt of funds by Eastern Savings Bank, fsb ("the Bank").  The Bank reserves the right to adjust these amounts, to demand additional funds, and to decline to pay the account in full if the funds received are insufficient to pay off the account in full for any reason, including but not limited to: error in calculation of the payoff amount; dishonor of any check, money order or other form of payment submitted by or on behalf of borrower; accrual of late charges; accrual of collection/foreclosure expenses; or additional disbursements of adjustments made by the Bank between the date of this payoff statement and receipt of the payoff funds.

<u>**CONFIDENTIALITY NOTICE:**</u>
The information contained in this transmission is intended solely for the party or parties addressed above.  If any party other than an intended recipient receives this transmission, please contact the sender at the above number and destroy all documents received by you.  Also, if this transmission contains any customer information, the recipient is advised that such information is covered by the privacy provisions of the Gramm-Leach-Bliley Act and any other privacy laws, regulations, and guidelines.  Accordingly, recipient shall take reasonable precautions to ensure the security and confidentiality of this customer information.



**2008121000341004001EB24D**

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | |

| **RECORDING AND ENDORSEMENT COVER PAGE** | **PAGE 1 OF 8** |
|---|---|

**Document ID:** 2008121000341004   Document Date: 11-20-2008   Preparation Date: 12-10-2008
Document Type: INITIAL UCC1                                    FIXTURE FILING
Document Page Count: 7

| **PRESENTER:** | **RETURN TO:** |
|---|---|
| FIRST AMERICAN TITLE INS. CO., HUDSON VALLEY | KRISS & FEUERSTEIN LLP |
| 1 WATER STREET (PICK-UP BY GAIL SULLIVAN) | ATTN: JEROLD C. FEUERSTEIN, ESQ. |
| 3008-254963(IS) | 360 LEXINGTON AVENUE (PICK-UP BY 1ST |
| WHITE PLAINS, NY 10601 | AMERICAN) |
| 914-428-3433 | NEW YORK, NY 10017 |
| isavundranayagam@firstam.com | |

## PROPERTY DATA

**Borough**      **Block  Lot**        **Unit    Address**
BROOKLYN         4701   1   Partial Lot           5302 CHURCH AVENUE
**Property Type:** 1-3 FAMILY WITH STORE / OFFICE

## CROSS REFERENCE DATA

CRFN_____  *or* Document ID_____  *or* _____ Year_____ Reel ___ Page _____ *or* File Number_____

## PARTIES

| **DEBTOR:** | **SECURED PARTY:** |
|---|---|
| MARCIA GORDON | EASTERN SAVINGS BANK, FSB |
| 6856 WINPINE STREET | EXECUTIVE PLAZA 2, 11350 MCCORMICK ROAD, |
| STONE MOUNTAIN, GA 30087 | SUITE 200 |
| | HUNT VALLEY, MO 21031 |

## FEES AND TAXES

| Mortgage | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ 0.00 |
| TAXES:   County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ 0.00 |
| Spec (Additional): | $ | 0.00 | | |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |
| Recording Fee: | $ | 40.00 | | |
| Affidavit Fee: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**
Recorded/Filed        12-16-2008 11:17
City Register File No.(CRFN):
**2008000477103**

*Annette M. Hill*

*City Register Official Signature*

███████████st American Title Ins. Co. of NY
███████████One Water Street  2nd Floor
███████████White Plains, New York 10601
███████████14) 428-3433

THIS SPACE FOR USE OF FILING OFFICER

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. SEND ACKNOWLEDGMENT TO: (Name and Address)

Kriss & Feuerstein LLP
Attn: Jerold Feuerstein, Esq.
360 Lexington Avenue, Suite 1200
New York, NY 10017

*3008-254963*

1. DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (1a or 1b) – do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 1b. INDIVIDUAL'S LAST NAME **GORDON** | | FIRST NAME **MARCIA** | | MIDDLE NAME | SUFFIX |
| 1c. MAILING ADDRESS **6856 Winpine Street** | | CITY **Stone Mountain** | STATE **GA** | POSTAL CODE **30087** | COUNTRY |
| 1d. SEE INSTRUCTIONS | ADD'TL INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL I.D.#, if any | ☐ NONE |

2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME – insert only one debtor name (2a or 2b) – do not combine or abbreviate names

| 2a. ORGANIZATION'S NAME | | | | | |
|---|---|---|---|---|---|
| 2b. INDIVIDUAL'S LAST NAME | | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 2c. MAILING ADDRESS | | CITY | STATE | POSTAL CODE | COUNTRY |
| 2d. SEE INSTRUCTIONS | ADD'TL INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL I.D.#, if any | ☐ NONE |

3. SECURED PARTY'S NAME (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P – insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME **Eastern Savings Bank, fsb** | | | | | |
|---|---|---|---|---|---|
| OR 3b. INDIVIDUAL'S LAST NAME | | FIRST NAME | | MIDDLE NAME | SUFFIX |
| 3c. MAILING ADDRESS **11350 McCormick Road, Suite 200** | | CITY **Hunt Valley** | STATE **MD** | POSTAL CODE **21031** | COUNTRY |

4. This FINANCING STATEMENT covers the following collateral:

SEE EXHIBIT "A" ANNEXED HERETO AND MADE A PART HEREOF

Commonly known as:
5302 Church Avenue
Brooklyn, NY 11203

Block:      4701
Lot:        1
County:     Kings
State:      New York

5. ALTERNATIVE DESIGNATION (if applicable): ☐ LESSEE/LESSOR   ☐ CONSIGNEE/CONSIGNOR   ☐ BAILEE/BAILOR   ☐ SELLER/BUYER   ☐ AG. LIEN   ☐ NON-UCC FILING

6. ☐ This FINANCING STATEMENT is to be filed (for record) (or recorded) in the REAL ESTATE RECORDS.   Attach Addendum   (if applicable)   7. Check to REQUEST SEARCH REPORT(s) on Debtor(s) (ADDITIONAL FEE)   (optional)   ☐ All Debtors  ☐ Debtor 1  ☐ Debtor 2

8. OPTIONAL FILER REFERENCE DATA

FILING OFFICE COPY – NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 05/22/02)

# UCC FINANCING STATEMENT ADDENDUM

**FOLLOW INSTRUCTIONS (front and back) CAREFULLY**

**9. NAME OF FIRST DEBTOR (1a or 1b) ON RELATED FINANCING STATEMENT**

| | |
|---|---|
| **9a. ORGANIZATION'S NAME** | |

OR

| **9b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME,SUFFIX** |
|---|---|---|
| Gordon | Marcia | |

**10.MISCELLANEOUS:**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**11. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - insert only <u>one</u> name (11a or 11b) - do not abbreviate or combine names

| | | | |
|---|---|---|---|
| **11a. ORGANIZATION'S NAME** | | | |

OR

| **11b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|
| | | | |

| **11c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|
| | | | | |

| **11d. SEE INSTRUCTIONS** | **ADD'L INFO RE ORGANIZATION DEBTOR** | **11e. TYPE OF ORGANIZATION** | **11f. JURISDICTION OF ORGANIZATION** | **11g. ORGANIZATIONAL ID #, if any** | ☐ NONE |
|---|---|---|---|---|---|

**12.** ☐ **ADDITIONAL SECURED PARTY'S** <u>or</u> ☐ **ASSIGNOR S/P'S   NAME** - insert only <u>one</u> name (12a or 12b)

| | | | |
|---|---|---|---|
| **12a. ORGANIZATION'S NAME** | | | |

OR

| **12b. INDIVIDUAL'S LAST NAME** | **FIRST NAME** | **MIDDLE NAME** | **SUFFIX** |
|---|---|---|---|
| | | | |

| **12c. MAILING ADDRESS** | **CITY** | **STATE** | **POSTAL CODE** | **COUNTRY** |
|---|---|---|---|---|
| | | | | |

**13.** This FINANCING STATEMENT covers ☐ timber to be cut or ☐ as-extracted collateral, or is filed as a ☐ fixture filing.

**14.** Description of real estate:

**5302 Church Avenue**
**Brooklyn, NY 11203**

**Block: 4701**
**Lot: 1**
**County: Kings**
**State:  New York**

**16.** Additional collateral description:

**15.** Name and address of a RECORD OWNER of above-described real estate (if Debtor does not have a record interest):

**17.** Check <u>only</u> if applicable and check <u>only</u> one box.

Debtor is a ☐ Trust  or ☐ Trustee acting with respect to property held in trust  or ☐ Decedent's Estate

**18.** Check <u>only</u> if applicable and check <u>only</u> one box.

☐ Debtor is a TRANSMITTING UTILITY

☐ Filed in connection with a Manufactured-Home Transaction — effective 30 years

☐ Filed in connection with a Public-Finance Transaction — effective 30 years

**FILING OFFICE COPY — UCC FINANCING STATEMENT ADDENDUM (FORM UCC1Ad) (REV. 05/22/02)**

EXHIBIT A
TO
UNIFORM COMMERCIAL CODE FINANCING STATEMENT (FORM UCC-1)

**DEBTOR:**          **MARCIA GORDON**

**SECURED PARTY:**          **Eastern Savings Bank, fsb**

**ITEM 4 *(CONTINUED)*:**  This FINANCING STATEMENT covers the following types or items of property (which, together with the Real Property, as defined below, constitutes and is referred to herein as the "**Property**") in which Debtor has any interest, whether currently owned or hereafter acquired, relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the real property (the "**Real Property**") more particularly described on Schedule "1" attached hereto (whether or not subsequently removed from the Real Property), including, without limitation, the follows:

(a)  All "Equipment," "Farm Products," "Inventory," "Documents," "Instruments," "Chattel Paper," "Accounts," and "General Intangibles" (as such terms are defined in the New York Uniform Commercial Code);

(b)  All of the following: (i) machinery and tools; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) rights, royalties, rents, security deposits, advance rentals, revenues, profits and benefits; (viii) leases, lease guarantees, contracts, contract rights, licenses, permits and certificates; (ix) deposits, funds, money and deposit accounts; (x) tenements, hereditaments and appurtenances; (xi) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xii) names under or by which the Property or any improvements to the Property (the "**Improvements**") may at any time be operated or known and rights to carry on business under any such names or any variant thereof; (xiii) trademarks and good will; (xiv) management agreements, service contracts, supply contracts or other contracts or agreements; (xv) warranties; (xvi) water stock; (xvii) shares of stock or other evidence of ownership of any part of the Property or Improvements that is owned by Debtor in common with others, and all documents of membership in any owners' or members' association or similar group having responsibility for managing, maintaining or operating any part of the Property or Improvements; (xviii) plans and specifications prepared for construction of improvements on the Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Property and/or Improvements, and contracts and agreements of Debtor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of improvements on the Property; (xix) sales agreements, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Property, and/or Improvements, together with all deposits and other proceeds of the sale thereof; (xx) damages, royalties and revenue of every kind, nature and description whatsoever that Debtor may be



EXHIBIT A (Continued)

**DEBTOR:**          **MARCIA GORDON**

**SECURED PARTY:**      **Eastern Savings Bank, fsb**

**ITEM 4** *(CONTINUED)*

entitled to receive from any person or entity owning or having or hereafter acquiring a right to the oil, gas or mineral rights and reservations of the Property; (xxi) deposits made with or other security given to utility companies by Debtor with respect to the Property and/or Improvements; (xxii) advance payments of insurance premiums made by Debtor with respect to, and all claims or demands with respect to, insurance; (xxiii) negotiable certificates of deposit of Debtor in Secured Party's possession and all accounts of Debtor maintained with Beneficiary and each deposit account of Debtor assigned to Beneficiary pursuant to any agreement; (xxiv) insurance proceeds; (xxv) condemnation awards; (xxvi) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Property and/or Improvements or for any loss or diminution in value of the Property and/or Improvements; (xxvii) books and records, including, without limitation, all computer records, computer tapes and electronic and electromagnetic representations and reproductions thereof; (xxviii) guaranties of and security for any of the foregoing; (xxix) all substitutions, renewals, improvements, attachments, accessions, additions and replacements to any of the foregoing; and all "Proceeds" (as such term is defined in the New York Uniform Commercial Code), collections, insurance proceeds and products of any of the property listed in (i) through (xxix) above, including without limitation, proceeds of any voluntary or involuntary disposition or claim respecting any part thereof (pursuant to judgment, condemnation award or otherwise) and all documents, instruments, general intangibles, goods, equipment, inventory, chattel paper, monies, accounts, deposit accounts and other personal property that may arise from the sale or disposition of any of the foregoing, all guaranties of and security for any of the foregoing, and all books and records, including, without limitation, all computer records, computer tapes and electronic and electromagnetic representations and reproductions thereof, relating to any of the foregoing.

    (c)    all easements and other rights now or hereafter made appurtenant to the Real Property; all additions and accretions to the Real Property; all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Real Property in which Debtor has an interest; all rights in or to existing or future streets or public places; all existing and future minerals, oil, gas and other hydrocarbon substances upon, under or through the Real Property; all water and water rights, pumps and pumping plants, and existing and future water stock relating thereto; all existing and future shares of stock or other evidence of ownership of any part of the foregoing property and all intangible property and rights relating to the foregoing property, or the operation thereof or used in connection therewith, including all options, sales contracts and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements; and all proceeds of any of the foregoing.



**EXHIBIT A (Continued)**

**DEBTOR:**         **MARCIA GORDON**

**SECURED PARTY:**         **Eastern Savings Bank, fsb**

**ITEM 6 *(CONTINUED)*:** SIGNATURE OF DEBTOR:

MARCIA GORDON

Date: November 20, 2008

**SCHEDULE 1 TO EXHIBIT A TO
UNIFORM COMMERCIAL CODE FINANCING
STATEMENT (FORM UCC-1)**

**DEBTOR:**          **MARCIA GORDON**

**SECURED PARTY:**       **Eastern Savings Bank, fsb**

Legal Description of Property attached hereto



**First American Title Insurance Company of New York**

Title No. 3008-254

## SCHEDULE "A"

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF BROOKLYN, COUNTY OF KINGS, CITY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF CHURCH AVENUE AND THE EASTERLY SIDE OF EAST 53RD STREET;

RUNNING THENCE EASTERLY ALONG THE SOUTHERLY SIDE OF CHURCH AVENUE, 20.01 FEET;

THENCE SOUTHERLY PARALLEL WITH EAST 53RD STREET THROUGH A PARTY WALL, 82.24 FEET;

THENCE WESTERLY PARALLEL WITH SNYDER AVENUE, 20 FEET TO THE EASTERLY SIDE OF EAST 53RD STREET;

THENCE NORTHERLY ALONG THE EASTERLY SIDE OF EAST 53RD STREET, 81.87 FEET TO THE CORNER, THE POINT OR PLACE OF BEGINNING.

**THE** policy to be issued under this report will insure the title to such buildings and improvements erected on the premises, which by law constitute real property.

**FOR CONVEYANCING ONLY: TOGETHER** with all the right, title and interest of the party of the first part, of in and to the land lying in the street in front of and adjoining said premises.



## NYC DEPARTMENT OF FINANCE
### OFFICE OF THE CITY REGISTER

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2013100101503001001EC770

| RECORDING AND ENDORSEMENT COVER PAGE | PAGE 1 OF 8 |
|---|---|

| Document ID: **2013100101503001** | Document Date: 11-20-2008 | Preparation Date: 10-01-2013 |
|---|---|---|
| Document Type: **UCC3 CONTINUATION** | | FIXTURE FILING |
| Document Page Count: **7** | | |

**PRESENTER:**
TONY HOPP
11350 MCCORMICK RD EP 2 SUITE 200
HUNT VALLEY, MD 21031
410-568-6013
AHOPP@EASTERNSAVINGSBANK.COM

**RETURN TO:**
TONY HOPP
11350 MCCORMICK RD EP 2 SUITE 200
HUNT VALLEY, MD 21031
410-568-6013
AHOPP@EASTERNSAVINGSBANK.COM

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 4701 | 1  Partial Lot | | 5302 CHURCH AVENUE |

**Property Type:** 1-3 FAMILY WITH STORE / OFFICE

### CROSS REFERENCE DATA

**CRFN:**    2008000477103

### PARTIES

**DEBTOR:**
MARCIA GORDON
6856 WINPINE STREET
STONE MOUNTAIN, GA 30087

**SECURED PARTY:**
EASTERN SAVINGS BANK, FSB
11350 MCCORMICK RD. EP 2 SUITE 200
HUNT VALLEY, MD 21031

### FEES AND TAXES

| Mortgage : | | | Filing Fee: | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 0.00 | NYC Real Property Transfer Tax: | |
| Exemption: | | | | $ | 0.00 |
| TAXES:  County (Basic): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| City (Additional): | $ | 0.00 | | $ | 0.00 |
| Spec (Additional): | $ | 0.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 0.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 0.00 | | | |
| Recording Fee: | $ | 40.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**
Recorded/Filed        10-11-2013 11:25
City Register File No.(CRFN):
**2013000422235**

*Jannette M Hill*

***City Register Official Signature***

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER [optional]**

**B. SEND ACKNOWLEDGMENT TO:**  (Name and Address)

> **Eastern Savings Bank, Fsb**
> **Executive Plaza 2**
> **11350 McCormick Rd., Suite 200**
> **Hunt Valley, Md 21031**
>
> **Attn: Commercial Loan Servicing**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE # | 1b. ☑ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS. |
|---|---|
| **2008000477103** | |

**2.** ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to security interest(s) of the Secured Party authorizing this Termination Statement.

**3.** ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to security interest(s) of the Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law.

**4.** ☐ **ASSIGNMENT** (full or partial): Give name of assignee in item 7a or 7b and address of assignee in item 7c; and also give name of assignor in item 9.

**5. AMENDMENT (PARTY INFORMATION):** This Amendment affects ☐ Debtor **or** ☐ Secured Party of record. Check only **one** of these two boxes.

Also check **one** of the following three boxes **and** provide appropriate information in items 6 and/or 7.

☐ CHANGE name and/or address: Please refer to the detailed instructions in regards to changing the name/address of a party.    ☐ DELETE name: Give record name to be deleted in item 6a or 6b.    ☐ ADD name: Complete item 7a or 7b, and also item 7c; also complete items 7e-7g (if applicable).

**6. CURRENT RECORD INFORMATION:**

| | 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 6b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
| | Gordon | Marcia | | |

**7. CHANGED (NEW) OR ADDED INFORMATION:**

| | 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | 7b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| | | | | |

| 7d. SEE INSTRUCTIONS | ADD'L INFO RE ORGANIZATION DEBTOR | 7e. TYPE OF ORGANIZATION | 7f. JURISDICTION OF ORGANIZATION | 7g. ORGANIZATIONAL ID #, if any |
|---|---|---|---|---|
| Not Applicable | | | | ☐ NONE |

**8. AMENDMENT (COLLATERAL CHANGE):** check only **one** box.

Describe collateral ☐ deleted or ☐ added, or give entire ☐ restated collateral description, or describe collateral ☐ assigned.

**See Exhibit "A" annexed hereto and made a part hereof**

**5302 Church Ave., Brooklyn, NY 11203**

**Block: 4701**
**Lot: 1**
**County: Kings**
**State: New York**

**9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT** (name of assignor, if this is an Assignment). If this is an Amendment authorized by a Debtor which adds collateral or adds the authorizing Debtor, or if this is a Termination authorized by a Debtor, check here ☐ and enter name of DEBTOR authorizing this Amendment.

| | 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|---|
| OR | **Eastern Savings Bank, fsb** | | | |
| | 9b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |

| 10. OPTIONAL FILER REFERENCE DATA |
|---|
| **321697724** |

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (FORM UCC3) (REV. 05/22/02)

# UCC FINANCING STATEMENT AMENDMENT ADDENDUM

FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**11. INITIAL FINANCING STATEMENT FILE #** (same as item 1a on Amendment form)

2008000477103

**12. NAME OF PARTY AUTHORIZING THIS AMENDMENT** (same as item 9 on Amendment form)

| 12a. ORGANIZATION'S NAME | | |
|---|---|---|
| Eastern Savings Bank, fsb | | |
| 12b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME, SUFFIX |

OR

**13. Use this space for additional information**

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

5302 Church Ave.
Brooklyn, NY 11203

Block: 4701
Lot: 1
County: Kings
State: New York

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT AMENDMENT ADDENDUM (FORM UCC3Ad) (REV. 07/29/98)

EXHIBIT A
TO
UNIFORM COMMERCIAL CODE FINANCING STATEMENT (FORM UCC-1)

**DEBTOR:**        **MARCIA GORDON**

**SECURED PARTY: Eastern Savings Bank, fsb**

**ITEM 4** *(CONTINUED)*: This FINANCING STATEMENT covers the following types or items of property (which, together with the Real Property, as defined below, constitutes and is referred to herein as the "Property") in which Debtor has any interest, whether currently owned or hereafter acquired, relating to, generated from, arising out of or incidental to the ownership, development, use or operation of the real property (the "Real Property") more particularly described on Schedule "1" attached hereto (whether or not subsequently removed from the Real Property), including, without limitation, the follows:

    (a)    All "Equipment," "Farm Products," "Inventory," "Documents," "Instruments," "Chattel Paper," "Accounts," and "General Intangibles" (as such terms are defined in the New York Uniform Commercial Code);

    (b)    All of the following: (i) machinery and tools; (ii) rugs, carpets and other floor coverings; (iii) draperies and drapery rods and brackets, awnings, window shades, venetian blinds and curtains; (iv) lamps, chandeliers and other lighting fixtures; (v) office maintenance and other supplies; (vi) apparatus, appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; (vii) rights, royalties, rents, security deposits, advance rentals, revenues, profits and benefits; (viii) leases, lease guarantees, contracts, contract rights, licenses, permits and certificates; (ix) deposits, funds, money and deposit accounts; (x) tenements, hereditaments and appurtenances; (xi) approvals and parcel maps (whether tentative or final), building permits and certificates of occupancy; (xii) names under or by which the Property or any improvements to the Property (the "Improvements") may at any time be operated or known and rights to carry on business under any such names or any variant thereof; (xiii) trademarks and good will; (xiv) management agreements, service contracts, supply contracts or other contracts or agreements; (xv) warranties; (xvi) water stock; (xvii) shares of stock or other evidence of ownership of any part of the Property or Improvements that is owned by Debtor in common with others, and all documents of membership in any owners' or members' association or similar group having responsibility for managing, maintaining or operating any part of the Property or Improvements; (xviii) plans and specifications prepared for construction of improvements on the Property, or any part thereof, and studies, data and drawings related thereto, including, without limitation, studies, data or reports relating to toxic or hazardous wastes or materials located on the Property and/or Improvements, and contracts and agreements of Debtor relating to the aforesaid plans and specifications or to the aforesaid studies, data, reports and drawings or to the construction of improvements on the Property; (xix) sales agreements, deposit receipts, escrow agreements and other ancillary documents and agreements entered into respecting the sale to any purchasers of any part of the Property, and/or Improvements, together with all deposits and other proceeds of the sale thereof; (xx) damages, royalties and revenue of every kind, nature and description whatsoever that Debtor may be

EXHIBIT A (Continued)

**DEBTOR:**　　　　**MARCIA GORDON**

**SECURED PARTY: Eastern Savings Bank, fsb**

**ITEM 4** *(CONTINUED)*

entitled to receive from any person or entity owning or having or hereafter acquiring a right to the oil, gas or mineral rights and reservations of the Property; (xxi) deposits made with or other security given to utility companies by Debtor with respect to the Property and/or Improvements; (xxii) advance payments of insurance premiums made by Debtor with respect to, and all claims or demands with respect to, insurance; (xxiii) negotiable certificates of deposit of Debtor in Secured Party's possession and all accounts of Debtor maintained with Beneficiary and each deposit account of Debtor assigned to Beneficiary pursuant to any agreement; (xxiv) insurance proceeds; (xxv) condemnation awards; (xxvi) causes of action, claims, compensation, awards and recoveries for any damage or injury to the Property and/or Improvements or for any loss or diminution in value of the Property and/or Improvements; (xxvii) books and records, including, without limitation, all computer records, computer tapes and electronic and electromagnetic representations and reproductions thereof; (xxviii) guaranties of and security for any of the foregoing; (xxix) all substitutions, renewals, improvements, attachments, accessions, additions and replacements to any of the foregoing; and all "Proceeds" (as such term is defined in the New York Uniform Commercial Code), collections, insurance proceeds and products of any of the property listed in (i) through (xxix) above, including without limitation, proceeds of any voluntary or involuntary disposition or claim respecting any part thereof (pursuant to judgment, condemnation award or otherwise) and all documents, instruments, general intangibles, goods, equipment, inventory, chattel paper, monies, accounts, deposit accounts and other personal property that may arise from the sale or disposition of any of the foregoing, all guaranties of and security for any of the foregoing, and all books and records, including, without limitation, all computer records, computer tapes and electronic and electromagnetic representations and reproductions thereof, relating to any of the foregoing.

　　　　(c)　　all easements and other rights now or hereafter made appurtenant to the Real Property; all additions and accretions to the Real Property; all fixtures, machinery, equipment, and appliances at any time attached to, or located in or on the Real Property in which Debtor has an interest; all rights in or to existing or future streets or public places; all existing and future minerals, oil, gas and other hydrocarbon substances upon, under or through the Real Property; all water and water rights, pumps and pumping plants, and existing and future water stock relating thereto; all existing and future shares of stock or other evidence of ownership of any part of the foregoing property and all intangible property and rights relating to the foregoing property, or the operation thereof or used in connection therewith, including all options, sales contracts and rights of first refusal of any nature whatsoever, covering all or any portion of such property, together with any deposits or other payments made in connection therewith, existing and future development rights, permits and approvals, air rights and other similar land use permits, approvals or entitlements; and all proceeds of any of the foregoing.

**EXHIBIT A (Continued)**

**DEBTOR:**           **MARCIA GORDON**

**SECURED PARTY:** Eastern Savings Bank, fsb

**ITEM 6** *(CONTINUED)***:** SIGNATURE OF DEBTOR:

**MARCIA GORDON**

Date: March 31, 2006

### SCHEDULE 1 TO EXHIBIT A TO
### UNIFORM COMMERCIAL CODE FINANCING
### STATEMENT (FORM UCC-1)

**DEBTOR:**          **MARCIA GORDON**

**SECURED PARTY: Eastern Savings Bank, fsb**

### Legal Description of Property attached hereto

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF
BROOKLYN, COUNTY OF KINGS, CITY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF CHURCH AVENUE AND THE EASTERLY SIDE OF EAST 53RD STREET;

RUNNING THENCE EASTERLY ALONG THE SOUTHERLY SIDE OF CHURCH AVENUE, 20.01 FEET;

THENCE SOUTHERLY PARALLEL WITH EAST 53RD STREET THROUGH A PARTY WALL, 82.24 FEET;

THENCE WESTERLY PARALLEL WITH SNYDER AVENUE, 20 FEET TO THE EASTERLY SIDE OF EAST 53RD STREET;

THENCE NORTHERLY ALONG THE EASTERLY SIDE OF EAST 53RD STREET, 81.87 FEET TO THE CORNER, THE POINT OR PLACE OF BEGINNING.



*First American Title Insurance Company of New York*

Title No. 3008-25

## SCHEDULE "A"

ALL THAT CERTAIN PLOT, PIECE OR PARCEL OF LAND, SITUATE, LYING AND BEING IN THE BOROUGH OF BROOKLYN, COUNTY OF KINGS, CITY AND STATE OF NEW YORK, BOUNDED AND DESCRIBED AS FOLLOWS:

BEGINNING AT A CORNER FORMED BY THE INTERSECTION OF THE SOUTHERLY SIDE OF CHURCH AVENUE AND THE EASTERLY SIDE OF EAST 53RD STREET;

RUNNING THENCE EASTERLY ALONG THE SOUTHERLY SIDE OF CHURCH AVENUE, 20.01 FEET;

THENCE SOUTHERLY PARALLEL WITH EAST 53RD STREET THROUGH A PARTY WALL, 82.24 FEET;

THENCE WESTERLY PARALLEL WITH SNYDER AVENUE, 20 FEET TO THE EASTERLY SIDE OF EAST 53RD STREET;

THENCE NORTHERLY ALONG THE EASTERLY SIDE OF EAST 53RD STREET, 81.87 FEET TO THE CORNER, THE POINT OR PLACE OF BEGINNING.

**THE** policy to be issued under this report will insure the title to such buildings and improvements erected on the premises, which by law constitute real property.

**FOR CONVEYANCING ONLY: TOGETHER** with all the right, title and interest of the party of the first part, of in and to the land lying in the street in front of and adjoining said premises.